VIRGIL GIBILTERRA, PLAINTIFF-RESPONDENT, PLAINTIFF-APPELLANT, v. ROSEMAWR HOMES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT, AND UNITED CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND FRANCIS L. BAYLEY, DEFENDANTS-APPELLANTS.

Argued May 16 and 23, 1955—Decided June 20, 1955.

*Mr. Samuel Doan* argued the cause for plaintiff-respondent-appellant (*Mr. Archibald Kreiger* of counsel).

*Mr. Robert Shaw* argued the cause for defendants-appellants (*Messrs. Shaw, Hughes & Pindar,* attorneys; *Mr. Shaw* and *Mr. William T. McElroy* of counsel).

*Mr. James J. Langan* argued the cause for defendant-respondent (*Messrs. Emory, Langan & Lamb,* attorneys; *Mr. James B. Emory* and *Mr. Langan* of counsel).

The opinion of the court was delivered by
WILLIAM J. BRENNAN, JR., J. United Construction Co., Inc., supplied Rosemawr Homes, Inc., with a steam shovel and an operator, Francis L. Bayley, to do excavation work on a tract being developed by Rosemawr in the City of Clifton. One Patsy Vellone had a contract with Rosemawr to do the plumbing work on the project. Vellone marked off the site of a trench to be dug in order that house plumbing might be connected with an underground sewer lateral. Bayley dug the trench, which was 30 to 35 feet long, 4 feet wide and 10 to 12 feet deep, depositing the excavated soil on one side of the trench in a pile which, according to plaintiff, reached a height of 8 or 9 feet. That side collapsed and seriously injured plaintiff, Vellone's employee, who was working in the trench, about to make the sewer connection. The collapse occurred a short time after plaintiff and Vellone had dug more soil with pick and shovel from the collapsed side near the bottom of the trench to reach the sewer lateral which was embedded there.

Plaintiff brought this action against Rosemawr, United and Bayley to recover damages for his injuries. At the close of plaintiff's case the action was dismissed by the trial court on the ground that there was no proof of negligence on the part of any defendant. Plaintiff offered an expert witness, Morris Mandl, to testify as to "standard methods" and in what way they were not followed in the digging of the trench; but Mr. Mandl was not permitted to testify because his name was not supplied by plaintiff in response to an interrogatory that he "state the name of every person known to plaintiff to have knowledge of any of the facts on which the allegations of the plaintiff are based." The Appellate Division sustained the dismissal as against Rosemawr, but reversed as against United and Bayley. *Gibilterra v. Rosemawr Homes, Inc.,* 32 *N. J. Super.* 315 (1954). We granted certification, 17 *N. J.* 225 (1955).

We agree that the dismissal should stand as against Rosemawr Homes, Inc. No proofs were offered to sustain the allegations that Rosemawr was negligent in its selection of Vellone or in hiring the shovel and its operator from United. *Cf. Sarno v. Gulf Refining Co.,* 99 *N. J. L.* 340 (*Sup. Ct.* 1924), affirmed *per curiam* 102 *N. J. L.* 223 (*E. & A.* 1925) ; see *Prosser, Torts, p.* 252 (1941). In such case the general principle is that the landowner is under no duty to protect an employee of an independent contractor from the very hazard created by the doing of the contract work. *Broecker v. Armstrong Cork Co.,* 128 *N. J. L.* 3 (*E. & A.* 1942) ; *Meny v. Carlson,* 6 *N. J.* 82, 89, 97, 22 *A. L. R.* 2d 1160 (1950). The obligations under the Safety Code, *R. S.* 34:5–1 *et seq.,* that the sides of every excavation in connection with a building operation "shall be sheet piled, braced or shored *when necessary* to prevent the soil from caving in on those engaged in work within such excavation," *R. S.* 34:5–21, and "All trenches *in loose or rolling soil* in connection with building operations shall be properly shored to prevent soil from caving in," *R. S.* 34:5–23, are imposed only upon "any manager, superintendent, owner, foreman or other person *in charge of* any building, construction or *other place,*

in which this chapter is violated," *R. S.* 34:5–161. (Emphasis supplied) Whatever may be the case as between Vellone, on the one hand, and United and Bayley, on the other, one or the other of them, and not Rosemawr, was "in charge" of the "place," the trench, where the Code was violated, if it was, and the violations cannot therefore be the basis of liability of Rosemawr. *Trecartin v. Mahony-Troast Construction Co.,* 18 *N. J. Super.* 380 (*App. Div.* 1952). Nothing in the record supports plaintiff's contention that Rosemawr participated in, actively interfered with, or exercised control of the manner and method by which the work of digging the trench was done. *Cf. Riley v. Jersey Leather Co.,* 100 *N. J. L.* 300 (*E. & A.* 1924); *Trecartin v. Mahony-Troast Construction Co., supra.* And the proofs do not bring the case within the exception to the general rule which subjects the owner to liability if the work was of the kind which Rosemawr should have recognized would during its progress necessarily create the danger of the mishap which occurred, and thus contained or involved an unreasonable or peculiar risk of bodily harm to plaintiff unless special precautions were taken, *Restatement, Torts, secs.* 413, 416, *pp.* 1118, 1128 (1934). The mere making of a trench with a steam shovel is not work which would necessarily give rise to an unreasonable or peculiar risk of the collapse of a sidewall upon workmen in the trench, and there is no showing to justify the inference that Rosemawr knew or should have known that danger of a collapse of the trench inhered in the soil in which the trench was dug. See *Terranella v. Union Bldg. & Construction Co.,* 3 *N. J.* 443 (1950); 57 *C. J. S., Master and Servant,* § 590, *p.* 362 (1948). Three cases cited by plaintiff, *Van Steenburgh v. Thornton,* 58 *N. J. L.* 160 (*E. & A.* 1895); *Regan v. Palo,* 62 *N. J. L.* 30 (*Sup. Ct.* 1898); and *Rocco v. F. A. Gillespie Co.,* 73 *N. J. L.* 591 (*E. & A.* 1906), do not controvert, but support the proposition that Rosemawr cannot be liable in the circumstances. The opinions emphasize that in the *Van Steenburgh* case the defendant's liability to the plaintiff workman injured in the collapse of the trench "was there placed upon the ground that there was in the earth

being excavated a danger that was known to the master, or which, by the exercise of reasonable care he would have known." *Rocco v. F. A. Gillespie Co., supra,* 73 *N. J. L.,* at *page* 593. And it will be noted that the Safety Code does not require special precautions in every trench but only in a trench where such precautions are "necessary" or when the trench is dug in "loose or rolling soil."

Plaintiff's proofs did, however, make out a case for liability of United and Bayley, provided such proofs were supplemented by expert opinion evidence which, as noted the witness Mandl was not permitted to give. Whether Bayley dug the trench in furtherance of United's general hire by Rosemawr of the shovel and operator or is to be deemed to have been permitted by United to become Vellone's servant in performing that task is a question for jury determination on the proofs, *Restatement, Agency, sec.* 227, *p.* 500, *comment* (c), *pp.* 501, 502 (1933); *Larocca v. American Chain & Cable Co.,* 13 *N. J.* 1, 6 (1953); *Younkers v. Ocean County,* 130 *N. J. L.* 607 (*E. & A.* 1943). Upon the premise that the trench was dug in the furtherance of the general hire, a jury might also find that United, through Bayley, was "in charge" of the trench within the meaning of the Safety Code, *Trecartin v. Mahony-Troast Construction Co., supra,* and therefore obliged to take special precautions to sheet pile, brace or shore the sides of the excavation if in the special circumstances presented any such precaution was "necessary to prevent the soil from caving in on those engaged in work within such excavation," *R. S.* 34:5–21, or properly to shore the trench "to prevent the soil from caving in" if the trench was dug "in loose or rolling soil," *R. S.* 34:5–23.

In addition to the evidence that the excavated soil was piled eight or nine feet high on the top of the sidewall which collapsed, there was proof that the sides of the trench were nearly vertical, or at least that there was insufficient slope to give a measure of security against collapse. And the plaintiff testified that the soil in the trench was "hard clay pan" from the floor "about three quarters" up the sides to a point "about two or three feet below" the top, and that

near the surface it was "fill in dirt, with boulders and so forth and so on."

■ Whether on this evidence it was "necessary" that the trench be sheet piled, braced or shored so that *R. S.* 34:5–21 was violated by United, if found to be, through Bayley, the person "in charge of * * * [the] place," *R. S.* 34:5–161, is plainly a matter upon which a lay jury should not be permitted to form a judgment without the aid of expert opinion evidence. Similarly, it is a matter of the expert opinion of those with specialized experience whether the soil described by plaintiff was "loose or rolling soil" to which the obligation of shoring under *R. S.* 34:5–23 applies. And on common-law principles of negligence, apart from any duty under the Safety Code, liability might rest upon a jury finding of a failure by United and Bayley, assuming the trench was dug by Bayley in the continuance of the general hire, to employ standard methods in digging it, provided expert opinion establishes what such methods are and it is found that they were not followed.

■ We agree with the Appellate Division that the trial judge should have permitted Mr. Mandl to testify. We do not agree, however, that *R. R.* 4:16–2, requiring the disclosure of the "identity and location of persons having knowledge of relevant facts," required that plaintiff supply Mr. Mandl's name in response to United's interrogatory. Therefore, it is not necessary to consider whether the Appellate Division was correct in saying that the error by the trial court lay in the failure, in the special circumstances, to waive the provisions of *R. R.* 4:23–12, providing that "In no case shall amendments [to answers to interrogatories] be allowed at the trial where it appears that the evidence sought to be introduced was known to the party seeking such leave, more than 10 days prior to trial." In our view, although the question of what is a "standard method" is concededly a question of fact, *7 Wigmore, Evidence* (*3d ed.* 1940), *secs.* 1917, 1919, *pp.* 1, 14, *R. R.* 4:16–2 expressly immunizes from production or inspection "the conclusions of an expert" (except the report of a physician as limited by *R. R.* 4:25–2) and it reason-

ably follows that the requirement in the earlier clause of R. R. 4:16–2 for disclosure of the identity and location of persons having knowledge of relevant facts does not embrace the giving of the names of expert witnesses not within R. R. 4:25–2 to the interrogating party. See *Schnitzer & Wildstein, N. J. Rules Serv.* A IV–457. We have not overlooked that, as Messrs. Schnitzer and Wildstein suggest at *p.* 458, "it may be argued, not without some force, that * * * supplying the names of experts retained by the adverse party enables the examining party to check his qualifications in advance of trial, and to meet his anticipated trial testimony by equally qualified experts, thus avoiding surprise." Following the 1955 Judicial Conference the court adopted an amendment to R. R. 4:16–2 to require disclosure of such expert witnesses' names for that limited purpose.

██ United argues next that plaintiff was injured after the trench was dug and accepted by Vellone and therefore that neither it nor Bayley may be held liable to plaintiff. We agree with the Appellate Division that the proofs do not sustain a finding of an acceptance of the work by Rosemawr, the owner hiring the shovel and operator from United, and that therefore the principle announced in *Miller v. Davis & Averill, Inc.*, 137 *N. J. L.* 671 (*E. & A.* 1948), relied upon by United, is inapplicable.

██ The briefs do not argue the questions of contributory negligence and proximate cause raised among the other proofs by the evidence that plaintiff and Vellone had dug into the side of the collapsed wall shortly before it fell. It suffices to say that on the record before us they too are issues for the determination of the jury.

Affirmed.

No. A–151:

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice OLIPHANT—1.

No. A–152:

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.