255 F.2d 730
 Gustave HARRISON, Plaintiff-Appellant in No. 12356,
v.
BLUEBERRY HILL, a Corporation of New Jersey,
Defendant-Appellee in No. 12356 and Cross-Appellant in No.
12357 and Tryon Construction Corp., a Corporation of New
Jersey, Defendant-Cross-Appellee in No. 12357.
 Nos. 12356, 12357.
 United States Court of Appeals Third Circuit.
 Argued Feb. 18, 1958.
Decided May 27, 1958.
 
 Bernard Chazen, Hoboken, N.J. (Baker, Garber & Chazen, Nathan Baker, Hoboken, N.J., on the brief), for plaintiff Harrison.
 Edward V. Ryan, Newark, N.J., for Blueberry Hill.
 Paul J. O'Neill, Newark, N.J., for Tryon Const. Co.
 Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 In a diversity action, plaintiff, Gustave Harrison,[1] brought suit against two New Jersey corporations, Blueberry Hill, ('Blueberry') and Tryon Construction Corp. ('Tryon'), seeking damages based on alleged negligence. Blueberry was the owner of a house in course of construction in Tenafly, New Jersey. Tryon was the carpenter contractor engaged by Blueberry. Plaintiff was employed by Key Painting Company, ('Key'), painting contractor on the job.
 
 
 2
 Blueberry in its answer to plaintiff's complaint denied negligence and affirmatively set up plaintiff's negligence. It also cross-claimed against Tryon for indemnification.
 
 
 3
 At the conclusion of the taking of testimony and before submission to the jury, the trial judge granted Blueberry's motion for dismissal of plaintiff's action. He denied a similar motion made by Tryon. However, he granted Tryon's motion to dismiss Blueberry's cross-complaint stating (p. 393, 394 N.T.): 'Because they are out of the case * * * they (Blueberry) could have no cross claim against you.' During the noon recess plaintiff settled with Tryon and entered into an agreement of dismissal as to it. Plaintiff advised the trial judge of its action when court resumed in the afternoon, stating however, that he was reserving his rights with respect to Blueberry's dismissal. About a week later plaintiff filed with the District Court a 'Stipulation of Dismissal as to defendant, Tryon Construction Corp.' which provided that it was 'with prejudice'. Subsequently, the trial judge entered an Order dismissing plaintiff's action against Blueberry and Blueberry's cross-complaint against Tryon.
 
 
 4
 Two appeals have resulted from that Order. In No. 12,356 plaintiff appeals from that part of the Order dismissing its action against Blueberry, and in No. 12,357 Blueberry appeals from the part of the Order dismissing its cross-claim for indemnification against Tryon.
 
 
 5
 Plaintiff's appeal presents the simple issue as to whether he had made out a case requiring submission to the jury. Blueberry's appeal is concededly protective in nature. It is premised on the contention that the trial judge only dismissed Blueberry's cross-claim against Tryon because he had dismissed plaintiff's action against Blueberry.
 
 
 6
 The testimony as adduced at the trial may be summarized as follows:
 
 
 7
 Plaintiff sustained the severe injuries giving rise to this litigation when he was thrown from a ladder when a casement window he was about to paint in one of Blueberry's model houses came out of the wall and struck him.
 
 
 8
 Plaintiff testified that he received instructions to paint the windows in the model house from David Lieberman, president of Blueberry, on Friday, May 13, 1955; on the following Monday, May 16, 1955, he started painting the windows; Lieberman saw him painting and did not say anything to him; he securely placed a six foot ladder underneath the window sill of the steel casement window in the master bedroom; he climbed the ladder and started to open the left panel when the entire casement window came out of the wall and pushed him backward off the ladder; he fell to the ground; the ladder remained standing; the casement window landed on the ground next to him breaking four panes of glass; with the exception of a piece of temporary molding about six or eight inches long with two twopenny nails, only the window itself, and no part of the wooden frame, fell to the ground; and there were no nails or screws observed in the window on the ground.
 
 
 9
 This account of events was contradicted by Lieberman who testified that plaintiff fell from an extension ladder, not a step ladder, as he was painting the peak of the house above the casement window and that the fall was caused by improper placement of the ladder on uneven ground. According to Lieberman's testimony, plaintiff reached out through the rungs of the ladder as he fell and grabbed one of the panels of the casement window in order to check the fall; instead, the entire window was pulled from the wall.
 
 
 10
 Lieberman further testified that Key supplied all paints, materials, brushes and ladders used on the job in the performance of the painting contract by its employees; Blueberry supplied Tryon and the other contractors with the materials used in the construction of the house, including the casement window in question; the window was purchased with a wood surround screwed to the metal frame by the manufacturer; and that Tryon installed the window two or three weeks before the accident. He denied instructing plaintiff to paint the windows of the house and stated both Key and Tryon had foremen on the job who were charged with the duty of actively supervising the work of their respective employees.
 
 
 11
 Several interrogatories and the defendant's answers were read into evidence by the plaintiff. Blueberry stated in these answers that prior to the date of the accident an 'inspection of the window' was made by Lieberman 'on his rounds of inspection of the building'. On cross examination Lieberman testified when he made his inspection of the window he 'shook it in order to loosen it up, in order to close it' but that he did not shake it to see if it was secure. He admitted, however, that in his deposition he stated that he had checked the window by giving it a 'vigorous shake' and that he had specifically checked the window to see that it was 'stationary and firm' and 'to make sure that the window was secure.'
 
 
 12
 Blueberry further stated in answer to the interrogatories that Lieberman supervised the 'work done in the erection and completion of a house' on its behalf. At the trial, Lieberman objected to the use of the term 'supervising' to describe his activities, and testified that he would 'coordinate the work to make sure that there is no loss of time between the time one trade would get in and the other would get in.' He denied that he was acting as a general contractor but admitted that on deposition he had stated the contrary. He also admitted that on deposition he stated he supervised the construction of the house as it was being put up; that he was the person in charge of the general construction of the building; that he checked the work done by the contractors to see that it was done satisfactorily 'as it progressed'; and that it was his job to correct the improper installation of a window.
 
 
 13
 Peter Pedersen, vice-president of Tryon, testified he was in charge of supervising the carpenters on the job in question and that he was present when the casement window was installed. He further stated that the window consisted of a metal frame with a wood surround; it was securely affixed to the building by eightpenny nails approximately one foot apart driven through the lip of the surround into the wooden frame of the window opening; that, with the exception of an unavailable ornamental panel having no connection with the window installation, the carpentry work on the casement window and the exterior of this model house was completed about one week before the accident; and that certain trim work on the interior of the house was necessarily delayed until after the plastering was completed and it was done subsequently.
 
 
 14
 Plaintiff's witness, John Candurra, a fellow painter, testified there was no wood surround about the window. John Stasse, plaintiff's expert witness, testified to the same effect and further, that the window had not been properly installed.
 
 
 15
 With respect to appeal No. 12,356, it must be considered in the light of the requirement that the evidence, together with all inferences which may reasonably be drawn from it, be viewed in the light most favorable to plaintiff.
 
 
 16
 That being so, we are of the opinion that the trial judge erred in dismissing plaintiff's action as to Blueberry.
 
 In dismissing, the trial judge said:
 
 17
 'We agree that generally there is a duty on a landowner who invites independent contractors on his land to furnish his employees with a reasonably safe place to work.
 
 
 18
 'The Court is convinced after a careful study of the construction cases that we find an exception to the general rule, whereas here, two or more independent contractors are engaged on the premises.
 
 
 19
 'I think the case of Gibilterra v. Rosemawr Homes, reported in 1955, (19 N.J. 166,) 115 A.2d 553 is analogous, it is analogous on its facts and the principles of law laid down in that case by Justice Brennan would seem to apply.'
 
 
 20
 The trial judge erred in regarding Gibilterra v. Rosemawr Homes, supra, as dispositive of the situation in the instant case. That case involved a suit by an employee of a plumbing contractor against the general contractor and the excavation contractor for injuries sustained when the side of a trench collapsed. The record discloses that the trench in question was dug in order what the house plumbing might be connected with an underground sewer lateral and that plaintiff and plaintiff's employer had done some digging just before the accident. After stating the general rule that liability of the general contractor could be predicated on negligent selection of independent contractors and finding that no such proofs were offered, the Court dismissed the case as to Rosemawr Homes, Inc., the general contractor, holding as follows at 115 A.2d 553, 555:
 
 
 21
 'In such case the general principle is that the landowner is under no duty to protect an employee of an independent contractor from the very hazard created by the doing of the contract work. * * * Nothing in the record supports plaintiff's contention that Rosemawr participated in, actively interfered with, or exercised control of the manner and method by which the work of digging the trench was done. * * * And the proofs do not bring the case within the exception to the general rule which subjects the owner to liability if the work was of the kind which Rosemawr should have recognized would during its progress necessarily create the danger of the mishap which occurred, and thus contained or involved an unreasonable or peculiar risk of bodily harm to plaintiff unless special precautions were taken * * *'.
 
 
 22
 In the instant case, plaintiff and Key, his employer, were not connected in any way with the installation or inspection of the casement window which allegedly caused the injury. Thus, the exception to liability on the part of a landowner or general contractor where an independent contractor comes upon the land by invitation to correct the precise condition which causes the injury is here inapposite. Bergquist v. Penterman, 1957, 46 N.J.Super. 74, 134 A.2d 20. Moreover, there is testimony which makes reasonable the inference that Blueberry, through its president, Lieberman, directed the plaintiff to paint the window in question and thereby exercised control over the time when the painting would be done and its coordination with the carpentry work.
 
 
 23
 It is well settled in New Jersey that the owner or occupier of lands who induces a person to come upon the premises by express or implied invitation is under a duty to exercise ordinary care to render the premises reasonably safe for the purposes embraced in the invitation. Gudnestad v. Seaboard Coal Dock Co., 1954, 15 N.J. 210, 104 A.2d 313. In that case the Supreme, Court of New Jersey specifically held that employees of an independent contractor engaged to work at the premises are considered invitees under this rule, the owner being under a duty to use ordinary care to provide them with a reasonably safe place to work. See also Murphy v. Core Joint Concrete Pipe Co., 1933, 110 N.J.L. 83, 164 A. 262; Meny v. Carlson, 1950, 6 N.J. 82, 77 A.2d 245, 22 A.L.R.2d 1160; Farrell v. Diamond Alkali Co., 1951, 16 N.J.Super. 163, 83 A.2d 900.
 
 
 24
 Here the jury could well have found that Tryon had completed the exterior carpentry work on the model house, including the installation of the casement window, and that Blueberry had accepted the work, thereby assuming control of the house insofar as the carpenter-contractor was concerned. Under these circumstances Blueberry would be liable to the plaintiff if it knew of the defect alleged or could have discovered it in the exercise of reasonable care upon an inspection of the work after it was completed. Blankley v. Nostrame, 1954, 30 N.J.Super. 405, 105 A.2d 33. See also Restatement of Torts 412(d); cf. Id., 364(c). The court in the Blankley case recognized that there was little law precisely on the point in New Jersey but found authority for the requirement of inspection in 412(d) of the Restatement of Torts and in numerous decisions in other jurisdictions. Moreover, the duty of the landowner to inspect the premises after the completion of a job by an independent contractor has been noted by the courts in suits against independent contractor for injuries sustained after their work was completed. Miller v. Davis & Averill, 1948, 137 N.J.L. 671, 61 A.2d 253; Smith v. Claude Neon Lights, 1933, 110 N.J.L. 326, 164 A. 423.
 
 
 25
 As to No. 12,357-- Blueberry's appeal from the trial judge's dismissal of its cross-claim against Tryon:
 
 
 26
 It is clear from the transcript of the trial proceeding, earlier referred to, that the trial judge, on Tryon's motion, dismissed Blueberry's cross-claim against it because, in his view, Blueberry, as a result of his dismissal of plaintiff's complaint against it, was 'out of the case' and consequently 'could have no cross-claim against you (Tryon).'
 
 
 27
 It is Blueberry's contention here that should we find the trial judge erred in dismissing plaintiff's complaint against it, that since the trial judge premised his dismissal of its cross-claim against Tryon on his prior dismissal of plaintiff's complaint against Blueberry, that we should in simple justice reverse the dismissal of its cross-claim and reinstate it.
 
 
 28
 In support of its position it points out that the trial judge, in his formal Order dismissing plaintiff's complaint against Blueberry and the cross-claim against Tryon, stated that the latter dismissal was 'conditioned' on the former, and was 'consented' to by Blueberry for that reason.
 
 The Order referred to provides in part:
 
 29
 '* * * following the dismissal of this action as to the defendant, Blueberry Hill, a motion having been made on behalf of the defendant, Tryon Construction Corporation, for dismissal of the cross-claim by the defendant Blueberry Hill against the defendant Tryon Construction Corporation, for any and all damages which might be awarded herein against Blueberry Hill in favor of plaintiff, and said motion to dismiss such a cross-claim likewise being granted, with consent of counsel for the defendant Bluebeerry Hill, in view of and conditioned on the dismissal of plaintiff's action as against the defendant, Blueberry Hill * * * the cross-claim of the defendant, Blueberry Hill, against the defendant, Tryon Construction Corporation, be and the same hereby is dismissed, without costs.'
 
 
 30
 Tryon vigorously excepts both to the 'conditioned' theory relied on by Blueberry and the trial judge's statement in his Order that Blueberry 'consented' to the dismissal of the cross-claim against Tryon because of it. It points out that Blueberry, accroding to the transcript, did not participate at all in the discussion attending the making, and disposition, of its motion to dismiss the cross-claim and that the trial judge erred in stating to the contrary.
 
 
 31
 Tryon is correct with respect to the trial judge's statements in his Order. Nevertheless, we are of the opinion that, it being clear the dismissal of the cross-claim was premised on the prior dismissal of plaintiff's action against Blueberry, and not on the merits, both dismissals should be reversed. Expeditious resolution of the controversy requires that result. We pursued the same course in Skovgaard, Adm. v. The Tungus, 3 Cir., 1957, 252 F.2d 14. In that case the district court had dismissed the libel and the impleading petition as a consequence of the dismissal of the libel. In reversing the dismissal of the libel we also reversed the dismissal of the impleading petition.
 
 
 32
 For the reasons stated the Order of the District Court in appeals Nos. 12,356 and 12,357 respectively dismissing the plaintiff's action against Blueberry and Blueberry's cross-claim will be reversed and the cause remanded with directions to the District Court to proceed in accordance with this Opinion.
 
 
 
 [1]
 Plaintiff was a resident of New York