104 N.J. Super. 436 (1969)
250 A.2d 408
MARIA RODRIGUES, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF LOUIS RODRIGUES, PLAINTIFF-APPELLANT,
v.
ELIZABETHTOWN GAS COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 18, 1968.
Decided February 17, 1969.
*438 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Leslie S. Kohn argued the cause for plaintiff-appellant (Messrs. Kohn, Kirsch & Needle, attorneys).
Mr. William A. Dreier argued the cause for defendant-respondent (Messrs. Mac Kenzie, Welt & Dreier, attorneys).
The opinion of the court was delivered by LEONARD, J.A.D.
In this action for wrongful death, plaintiff administratrix ad prosequendum of the estate of Louis Rodrigues appeals from a judgment of involuntary dismissal of her cause of action.
Plaintiff's decedent had been employed by Allied, Inc. of Rahway as a gas pipe-fitter and "couple-man" for about six months. Allied, an independent contractor specializing in the repair of gas leaks, was engaged by defendant, a natural gas company, to repair a leak in an underground gas line owned by defendant in the area of Cornell Street, Rahway. On August 27, 1964 decedent and two other Allied employees, Adams, a laborer, and Charney, a foreman, traveled by Allied truck to the situs of the leaking gas line.
*439 Upon arrival Charney, by use of an "indicator," ascertained the location of the buried gas pipe and marked off an area three feet by three feet for excavation. Adams dug a hole at that area (on the lawn of a house fronting on Cornell Street) approximately three feet in each dimension  depth, width and length. This excavation exposed the leaking gas pipe (but not the leak per se), a gas main and a shut-off valve.
Immediately following the digging by Adams, decedent entered the excavation and while in a crouched position shoveled out some dirt and exposed the leak. Adams, at decedent's request, went to Allied's truck and secured a piece of tape and "duck seal." When Adams returned, decedent was standing erect with his foot over the leak. Upon receipt of these materials decedent bent down in the hole and placed them over and around the pipe at the point of the leak. However, they did not stop the leak, and Adams secured more tape and seal from the truck, which he gave to decedent. Again decedent crouched down and applied the tape and seal to the leak. But gas was still escaping with a hissing sound. Adams went to the truck for the third time and returned with an adjustable wrench that he handed to decedent. Decedent then resumed a crouched position and attempted, with the use of the wrench, to shut off the valve, but he was not successful. Once more Adams, at decedent's request, went to the truck to secure additional tape. Upon his return, decedent was not moving and was lying against the side of the hole in a crouched position.
Adams immediately pulled decedent out of the hole and called to a woman in a nearby house to summon "the cops, ambulance or something." Police arrived, but their attempt to revive decedent with the use of oxygen and "another device" was to no avail. He was dead.
Adams testified that he smelled gas and heard it escaping with a "hissing" or "whistle" sound from the time he first began to dig the hole until he removed decedent therefrom. He further testified that when he and the other men first *440 arrived at the location one of defendant's inspectors was present, but that before the excavation began the inspector and Charney left in defendant's truck for some fittings. They did not return until after the police had arrived.
In this action plaintiff alleges that decedent died of gas asphyxiation. Plaintiff conceded that the natural gas distributed by defendant was not poisonous and that the deceased did not die as a result of any noxious substance or carbon monoxide in the gas. She contends that decedent was asphyxiated, i.e., "gas replaced oxygen and there wasn't enough oxygen in the air for him to remain conscious and survive."
The pretrial order charges that defendant was negligent "in failing properly to supervise the work; properly to warn and safeguard decedent; failing to have on the site and provide necessary equipment both to prevent asphyxiation and to treat employees who might be injured; failing properly to train decedent and other persons who might be working in and about its gas lines in the proper precautions to be taken."
However, in his opening plaintiff charged defendant with negligence in the following respects: the failure of defendant's foreman or other personnel to remain at the job site so that decedent would not be left alone and unattended in a hole with escaping gas; the failure of defendant's truck to remain at the site and to have had thereon proper masks, respirators and equipment to revive people who might be overcome by gas; the failure to furnish decedent with a mask, and the failure to see that proper safeguards and safety equipment were on hand.
At the trial plaintiff's only witness was Adams, the laborer for Allied. He testified substantially to the facts as hereinbefore related. He was then asked, while still on direct examination, "Do you know whether the Gas Company truck that was there that morning contained any pull motors [sic], oxygen, respirators or masks?" Upon objection thereto there followed protracted argument between counsel and discussion *441 by the court. During the course of this argument counsel for plaintiff made an unusual suggestion. He asked counsel for defendant to "amend his motion [objection] so as to make a motion for involuntary dismissal and I shall stipulate sufficient facts and have Your Honor rule on it because this looks to me like a very long and expensive case for me to try." Thereupon plaintiff's counsel stipulated "that any additional evidence I might bring in on the question of liability would go to the question of whether or not the duty of the gas company to provide safeguards and to warn [employees of Allied of the dangers] is a nondelegable duty. If it is not a nondelegable duty, I submit, that I have no case. So that I would like Your Honor to rule on that. If you are going to rule adversely, I don't see the point of wasting a couple of more days time."
Defendant's attorney accepted the suggestion and the trial court treated the matter as if on a motion for dismissal. During the course of the lengthy argument that followed, counsel for plaintiff stated that he intended to introduce certain standards contained in a manual of the American Gas Association, Inc. However, neither the manual nor any other proof of standards were submitted. On more than one occasion the court indicated that it was inclined to grant the motion of dismissal on the record as it existed, but offered plaintiff an opportunity to present additional evidence. The court further indicated that it would defer the motion "to see what other proofs you have." In spite of these offers, plaintiff produced no additional evidence and the court granted the motion for dismissal.
At the oral argument, in order to make certain that plaintiff was not deprived of substantial justice, we gave her an opportunity to advise us of the manual that she intended to rely upon and the pertinent provisions thereof. Subsequently, we were advised by letter that it was Suggested Safe Practices for Gas Distribution Men (4th ed.), published by the Accident Prevention Committee of the American Gas Association Inc. Thereafter, we were advised by *442 letter from counsel for defendant that the cited manual was published in 1966, two years after the accident. Since plaintiff's counsel did not dispute this fact, we accept it as true. Thus, the proffered manual is not pertinent or relevant and we shall not consider it. We have, therefore, no other alternative than to dispose of this case on the record as made by plaintiff in the trial court, inadequate as it may be.
Plaintiff contends that one who employs an independent contractor to perform work which entails an inherent risk of injury to others will be liable to persons so injured if he fails to use reasonable care to take precautions against such risk. This liability, she argues, extends to employees of the independent contractor. The application of this contention to the present case is bottomed upon the assertion that gas is an "inherently dangerous substance."
Generally, a landowner or contractor is under a duty to exercise reasonable care to render the work site reasonably safe for the employee of an independent contractor who comes upon those premises for the purpose of performing work thereon, and this duty is nondelegable. Piro v. Public Service Electric & Gas Co., 103 N.J. Super. 456, 463 (App. Div. 1968), affirmed 53 N.J. 7 (1968).
However, where the landowner or contractor does not retain control over the doing of the work, he is not responsible for injuries sustained by an independent contractor or his employee that result from the very defect or condition that such person is upon the land to remedy or to inspect, Broecker v. Armstrong Cork Co., 128 N.J.L. 3, 5-7 (E. & A. 1942); Walsh v. Madison Park Properties, Ltd., 102 N.J. Super. 134, 140-142 (App. Div. 1968); Reiter v. Max Marx Color & Chemical Co., 67 N.J. Super. 410, 412-413 (App. Div. 1960), affirmed 35 N.J. 37 (1961); Bergquist v. Penterman, 46 N.J. Super. 74, 82-83 (App. Div.), certification denied 25 N.J. 55 (1957); Hammond v. Eldorado Springs, 362 Mo. 530, 242 S.W.2d 479, 480, 31 A.L.R.2d 1367 (Mo. Sup. Ct. 1951), or which result from hazards inhering in or necessarily created by the very doing of the *443 work itself, Gibilterra v. Rosemawr Homes, Inc., 19 N.J. 166, 170-171 (1955); Wolczak v. National Electric Products Corp., 66 N.J. Super. 64, 75 (App. Div. 1961); Jensen v. Somerset Hospital, 58 N.J. Super. 204, 208 (App. Div. 1959), certification denied 31 N.J. 551 (1960); Trecartin v. Mahony-Troast Construction Co., 18 N.J. Super. 380, 386 (App. Div. 1952).
In some jurisdictions, however, an exception to this latter rule is recognized where the independent contractor is employed to do work that is "inherently dangerous." That is, work that the contractor should recognize as necessarily requiring the creation during its progress of a condition involving a grave and peculiar risk of harm to others unless special precautions are taken, and that can be safely carried on only by the exercise of special skill and care, is considered inherently dangerous. In such a situation, if the contractor is negligent in taking the requisite special precautions or in exercising the necessary skill and care, he will be liable for injuries to the employees of independent contractors. See, e.g., Woolen v. Aerojet General Corp., 57 Cal.2d 407, 20 Cal. Rptr. 12, 369 P.2d 708, 711 (Cal. Sup. Ct. 1962); Gowdy v. United States, 271 F. Supp. 733, 748 (D.C.W.D. Mich. 1967). On the other hand, a considerable number of jurisdictions have refused to extend the "inherently dangerous activity" rule to the employees of independent contractors. These jurisdictions have limited the application of the rule only to instances of injury to unrelated third parties, such as adjacent landowners or innocent bystanders, classes that were the initial catalysts for and beneficiaries of the evolution of the rule. See, e.g., Evans v. Whirlpool Corp., 10 Ohio St.2d 240, 227 N.E.2d 208, 209 (Ohio Sup. Ct. 1967); Welker v. Kennecott Copper Co., 1 Ariz. App. 395, 403 P.2d 330, 338 (Ariz. Ct. App. 1965); Epperly v. City of Seattle, 65 Wash.2d 777, 399 P.2d 591, 596 (Wash. Sup. Ct. 1965).
This jurisdictional split has been noted but not resolved in New Jersey. See Wolczak, supra, 66 N.J. Super., at pp. *444 72-73. The indications are, however, that New Jersey would extend the application of the "inherently dangerous activity" rule to the employees of independent contractors. In Gibilterra, supra, 19 N.J., at p. 171 and in Marion v. Public Service Elec. & Gas Co., 72 N.J. Super. 146, 159 (App. Div. 1962), employees of independent contractors were suing for injuries sustained by them while performing the work for which their employers had been retained by the respective contractors. Both courts held that the inherently dangerous activity rule was not applicable to the facts before them, on the single ground that the work that plaintiffs were engaged in did not amount to inherently dangerous activities. No disqualifying significance was placed upon the fact that plaintiffs in both cases were employees of independent contractors, and, had the facts been suitable, it is implicit in both opinions that recovery would have been permitted under the inherently dangerous activity doctrine. Gibilterra, supra, 19 N.J., at p. 171; Marion, supra, 72 N.J. Super., at 159. Similarly, in Breece v. J.F. Chapman & Son, Inc., 302 F.2d 581 (3 Cir. 1962), a case governed by New Jersey substantive law, the court assumed in dictum that New Jersey law extended the inherently dangerous activity doctrine to instances of injury to employees of independent contractors. Breece, supra, at pp. 583-584.
Assuming without deciding that New Jersey would include employees of independent contractors within the purview of the inherently dangerous activity rule, the facts of the instant case are still inappropriate to the invocation of this doctrine. The term "inherently dangerous activity" means more than danger that arises simply from the casual or collateral negligence of persons engaged in that activity under particular circumstances, or danger which arises solely from the means and methods of its performance. Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425, 435 (1959). It signifies more than danger arising merely from negligence in the operative details of the work, Restatement, Torts 2d § 427, comment (d) (1965); Holt v. Texas-New *445 Mexico Pipeline Co., 145 F.2d 862, 864 (5 Cir. 1944) (applying Texas Law). The term "inherently dangerous activity" denotes that a danger inheres in the activity itself at all times, whether or not carefully performed, and imports that it is incidental to and characteristic of the work itself, Majestic, supra, 30 N.J., at p. 435. It implies a special danger inherent in the nature of the work per se. Restatement, Torts 2d, § 427.
Furthermore, the mere fact that an injured employee of an independent contractor was engaged in an activity that presented peculiar, intrinsic hazards, so that the activity could rationally be denoted "inherently dangerous", does not without more yield him a cause of action against the contractor or landowner. Plaintiff's injuries must also have resulted from the very dangers that were inherent in the activity and that are the underlying reasons for that activity being defined as inherently dangerous. The rule is not applicable where plaintiff's injuries result from some collaterally created or noninherent hazard, even though the activity engaged in might generally be classified as inherently dangerous. Breece, supra, 302 F.2d, at p. 584, n. 1 (dictum); Holt, supra, 145 F.2d, at p. 864; Restatement, Torts, 2d § 427, comment (d) (1965); see Majestic, supra, 30 N.J., at p. 435; Gibilterra, supra, 19 N.J., at pp. 171-172; Restatement, Torts 2d, § 416, comment (a) (1965).
Insofar as the possibility of fire or explosion is concerned, gas is an extraordinarily dangerous commodity, and to prevent the possibility of harm from these hazards the exercise of proportionate care is required. See Araujo v. New Jersey Natural Gas Co., 62 N.J. Super. 88 (App. Div. 1960) (explosion and fire); Oklahoma Natural Gas v. Appel, 266 P.2d 442 (Okl. Sup. Ct. 1954) (explosion); Lee v. Gas Service Co., 166 Kan. 285, 201 P.2d 1023 (Kan. Sup. Ct. 1963) (explosion); Ambriz v. Petrolane, Ltd., 49 Cal.2d 470, 319 P.2d 1 (Cal. Sup. Ct. 1957) (explosion and fire).
However, the instant case does not involve a fire or explosion. Involved here is the alleged asphyxiation of *446 plaintiff's decedent by the inhalation of natural gas. As noted above, plaintiff stipulated that the gas was nonpoisonous. Cf. Anderson v. Atlantic City Gas Co., 7 N.J. Misc. 297 (Sup. Ct. 1929) (poisonous monoxide gas). Adams testified that the gas was odorized. We take judicial notice of the fact that natural gas is lighter than air. See Gas Engineers Handbook, c. 2, p. 2/9 (Industrial Press 1965); N.J. Rules of Evidence 9(2) (e). Allied, by whom decedent was employed, was a specialist in repairing gas leaks, and decedent himself was an experienced gas pipe-fitter. On the day in question he was working out of doors in an open area and in a very shallow hole (3'). Under all of these circumstances, we hold that the danger of accidental asphyxiation was not a hazard inherent in and peculiar to decedent's activity, but rather one which would result only from some collateral negligence in the manner or means of performance. Defendant had no reason to anticipate that the work contracted for would create a special and inherent risk of asphyxiation, so that unusual precautions on its part were required in order to escape potential liability. Thus, insofar as the danger of asphyxiation was concerned, we find that decedent was not engaged in an inherently dangerous activity and liability cannot be imposed upon defendant upon the theory that he was so engaged. Therefore, we conclude that defendant is not liable for decedent's death.
Judgment affirmed.