**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3787-17T1

JOSEPH GAGE,

      Plaintiff-Appellant,

v.

THE COLLEGE OF NEW JERSEY,
STATE OF NEW JERSEY, and
DAVID JURKIN,

      Defendants-Respondents,

and

DLB ASSOCIATES, INC.,

      Defendant.

_____

Argued March 4, 2019 – Decided March 22, 2019

Before Judges Messano and Fasciale.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1110-16.

Joseph Gage, appellant, argued the cause pro se (Michael J. Confusione, on the brief).

Denise M. Fontana Ricci argued the cause for respondents (Wade Clark Mulcahy LLP, attorneys; Denise M. Fontana Ricci, of counsel and on the brief; Brent A. Bouma, on the brief).

PER CURIAM

In this personal injury trench-collapse case, plaintiff appeals from an April 5, 2018 order granting summary judgment to The College of New Jersey (TCNJ), State of New Jersey, and David Jurkin (collectively defendants). The primary legal question is whether defendants owed plaintiff a duty of care. The judge concluded they did not. We agree and affirm.

When reviewing an order granting summary judgment, we apply "the same standard governing the trial court." Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). A court should grant summary judgment when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We owe no special deference to the motion judge's conclusions on issues of law. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We therefore consider the facts in a light most favorable to plaintiff, the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

TCNJ contracted with A&J Construction (A&J) to replace steam pipes on its campus (the project). Jurkin worked for TCNJ as its project engineer.

Plaintiff, who had extensive experience digging and laying pipes, worked for A&J. On the project, he excavated the trenches, exposed existing pipes, and installed the replacement pipes. Plaintiff sustained injuries when the trench in which he was standing collapsed.

On appeal, plaintiff argues primarily that defendants owed him a duty of care. He contends that Jurkin exercised enough control over the project to halt the work before the accident occurred. Plaintiff asserts that even if TCNJ did not have a contractual obligation to take corrective measures, it should have done so anyway.

A&J had the sole contractual responsibility for the project. Under Paragraph 4 of the contract, entitled "Scope of Work," A&J assumed "full responsibility for constructing and completing the project." The general conditions of the contract, Article 2, Paragraph A, stated that "[TCNJ] will not supervise [A&J's] work or be responsible for [A&J's] construction means and methods, or [A&J's] safety practices, or any failure of [A&J] to comply with the contract or any laws or regulations." Article 2, Section G, said that TCNJ had no obligation to "inspect every item of work . . . or to have inspectors with the expertise needed to judge every aspect of the work." Article 4, Section A, imposed on A&J the obligation to

manage, supervise, schedule, direct, and inspect the work as competently, skillfully, and efficiently as possible, and shall be <u>solely responsible for all construction means, methods, techniques, safety, security, sequences, procedures, and coordination</u>.

[(Emphasis added).]

Importantly, Article 5, Section B of the contract explicitly stated that A&J was responsible for the safety at the project and safety programs.

[A&J] shall have <u>full responsibility for safety</u> at the project site at all times up to final completion and acceptance of the project and the contract. [A&J] <u>shall provide for the safety</u> of all individuals on the project site, and <u>take measures to ensure</u> that <u>individuals</u> on or near the project site are <u>not injured</u> by the performance of the contract.

[(Emphasis added).]

Moreover, A&J's president testified that his company was contractually responsible for the "means and methods" of the work, and for safety on the jobsite.

Generally, "a landowner has a non-delegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers." <u>Dawson v. Bunker Hill Plaza Assocs.</u>, 289 N.J. Super. 309, 317 (App. Div. 1996) (quoting <u>Kane v. Hartz Mountain Indus., Inc.</u>, 278 N.J. Super. 129, 140 (App. Div. 1994)). There is an exception to the general rule under that scenario. A

4

"landowner is under no duty to protect an employee of an independent contractor from the very hazard created by doing the contract work." Id. at 318.

> Under this well recognized exception to the general rule, "[t]he duty to provide a reasonably safe place to work is relative to the nature of the invited endeavor and does not entail the elimination of operational hazards which are obvious and visible to the invitee upon ordinary observation and which are part of or incidental to the very work the contractor was hired to perform."
>
> [Ibid. (alteration in original) (quoting Sanna v. Nat'l Sponge Co., 209 N.J. Super. 60, 67 (App. Div. 1986)).]

But, "[a] landowner, of course, will not escape liability if the landowner retains control 'over the manner and means by which the work is to be performed, [or] where the work constitutes a nuisance per se[,] or where one knowingly engages an incompetent contractor.'" Ibid. (second alteration in original) (quoting Cassano v. Aschoff, 226 N.J. Super. 110, 113 (App. Div. 1988)); see also Olivo v. Owens-Illinois, Inc., 186 N.J. 394, 407 (2006) (internal quotation marks omitted) (indicating that "[t]he exception only applies . . . when the landowner does not retain control over the means and methods of the execution of the project"). A landowner's general supervisory control of the results of the independent contractor's work does not equate to control of the manner and

means for performing the work. <u>Marion v. Pub. Serv. Elec. & Gas Co.</u>, 72 N.J. Super. 146, 152 (App. Div. 1962).

The record contains no credible evidence demonstrating that defendants directed, supervised, or managed A&J's work. And plaintiff's co-workers testified that the project engineer did not control A&J's work. Rather, defendants left the ways, means, and methods of the work to A&J, who was an experienced, qualified, and capable contractor. Plaintiff himself testified that A&J's superintendent told him where to work. Plaintiff said that he would see Jurkin at the site for about five-to-ten minutes from time to time, and that they "talked about sports [and] all kinds of stuff." In general, Jurkin visited the job site from time to time to perform periodic inspections of work and materials. But he did not direct how A&J performed its work, was not required to undertake supervisory responsibility for A&J's work, and did not act as foreman for the project.

To impose a duty on defendants, plaintiff relies on <u>Carvalho v. Toll Bros. & Developers</u>, 143 N.J. 565 (1996), but that reliance is misplaced. In <u>Carvalho</u>, the issue was whether the engineer, hired by the landowner, owed a duty to the injured worker. <u>Id.</u> at 569. Here, the legal issue is whether the landowner owed plaintiff a duty. This is significant because the Court did not address the general

legal principles for imposition of the duty of a landowner, but rather, considered only the foreseeability of the harm and fairness pertaining to the engineer's duty. Here, plaintiff argues that TCNJ – the landowner – owed him a duty of care.

Defendants cite to <u>Gibilterra v. Rosemawr Homes</u>, 19 N.J. 166, 170 (1955), where our Supreme Court concluded that the landowner owed no duty to the plaintiff. The Court stated that "[n]othing in the record supports [the] plaintiff's contention that [the landowner] participated in, actively interfered with, or exercised control of the manner and method by which the work of digging the trench was done." <u>Id.</u> at 171. The work was not of the kind that the landowner "should have recognized would during its progress necessarily create the danger of the mishap which occurred, and thus contained or involved an unreasonable or peculiar risk of bodily harm to [the] plaintiff unless special precautions were taken." <u>Ibid.</u> The Court concluded that "[t]he mere making of a trench" did not give rise to an "unreasonable or peculiar risk of the collapse of a sidewall upon workmen in the trench[.]" <u>Ibid.</u> The Court further stated, "there is no showing to justify the inference that [the landowner] knew or should have known that danger of a collapse of the trench inhered in the soil in which the trench was dug." <u>Ibid.</u>

Likewise, we have previously held that landowners have no duty to eliminate operational hazards that are obvious and visible to an employee and that are incidental to the very work the contractor was hired to perform. See Rigatti v. Reddy, 318 N.J. Super. 537, 542 (App. Div. 1999). That is especially the case when a landowner "could reasonably assume that [the] plaintiff or his superiors were 'possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly.'" Id. at 542-43 (quoting Wolczak v. Nat'l Elec. Prods. Corp., 66 N.J. Super. 64, 75 (App. Div. 1961)). We distinguished Rigatti from Carvalho and stated that the landowner could "reasonably assume" that the general contractor and its subcontractors "would be aware of the dangers inherent in the work and, applying their own expertise . . . , take necessary steps to prevent harm to the workers." Ibid. Here, the duty of care that plaintiff believes exists is one to protect him from doing the very work for which TCNJ hired A&J to do.

It is undisputed that plaintiff has extensive experience in heavy construction and pipe projects. As to trench work, OSHA trained him about safety requirements, and he was aware of trench risks. Plaintiff had worked approximately thirty years as a laborer. And he worked on pipe projects, including as a foreman at various job sites.

On the afternoon before the accident, A&J's project engineer—not defendants—made arrangements for the delivery of a trench box, which is a large metal box placed into the trench to stabilize the sidewalls, for the area where plaintiff had been working. A&J had ordered the box because of the condition of the soil. There is no evidence showing that Jurkin knew why A&J had ordered the trench box, or that Jurkin had prior experience as a project engineer on trench operations. On the morning of the accident, plaintiff did not wait for the trench box to arrive, although he knew it was on the way, but instead, he worked in the ditch without it. His co-worker, who did not see plaintiff in the ditch, started excavating, saw a fissure in the trench wall, and yelled as the soil hit his excavation equipment. Jurkin was neither present when A&J ordered the trench box nor at the site on the morning of the accident.

Additionally, defendants argue that they are immune under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. The judge granted summary judgment to defendants concluding that they owed plaintiff no duty of care, and she explicitly declined to consider the parties' arguments based on the TCA. We also do not need to reach the issue here.

As to plaintiff's remaining claims – to the extent we have not addressed them – we conclude that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3787-17T1