FLORENCE BROECKER, ADMINISTRATRIX AD PROSE-QUENDUM OF JAMES P. O'DONNELL, DECEASED, PLAINTIFF-APPELLANT, v. ARMSTRONG CORK COMPANY, A CORPORATION, DEFENDANT-RESPONDENT.

Submitted October 31, 1941—Decided January 29, 1942.

4

For the plaintiff-appellant, *Walter S. Keown.*

For the defendant-respondent, *Ralph N. Kellam.*

The opinion of the court was delivered by

CASE, J. The appeal is from a judgment entered in the Supreme Court following a nonsuit granted by Judge Shay in the Cumberland Circuit of the Supreme Court.

The action was to recover damages for the death of the plaintiff's decedent which came as the result of a fall through a defective roof which the said decedent as an employee of W. H. Tinney Company, a Philadelphia roofing concern, was engaged in replacing. The accident occurred at the plant known as the old Whittall Tatum glass plant at Millville. In the operation of that plant use was made of a blast furnace, and the heat from the furnace through the years dried out the wood of the roof. Consequently the roof had to be replaced.

W. H. Tinney Company undertook the job as an independent contractor, and the decedent was an employee of, and worked under, the direction of that company. There is no proof that Armstrong Cork Company exercised any authority over the contractor or the contractor's employees as to the methods which should be followed or the precautions which should be taken in the performance of the work. In general the method pursued was that the old roof boards and roofing materials were torn off in sections twenty feet in width by forty feet in length. The heavy roof girders, spaced twelve feet apart, were retained. The new roofing consisted of a corrugated asbestos sheeting material laid upon new channel irons which in turn rested upon the girders and were twenty feet in length, eight inches wide and one quarter of an inch thick and weighed about 400 pounds. Each day a section of the old roofing was torn off, the new materials were hoisted through the opening thus made and piled in a convenient spot, and the closing of the opening with the new roofing constituted a day's work. The decedent O'Donnell was on the roof

engaged in that work. The job had progressed for three weeks and was about three-fourths completed when O'Donnell stepped on an unremoved portion of the old material that was not strong enough to bear his weight and fell through, receiving injuries that resulted in death.

The theory upon which the appellant would sustain her case is that O'Donnell was an invitee on the defendant's premises and that thereby the defendant was placed under the duty of furnishing him with a reasonably safe place to work. In support of that theory appellant cites *Riley* v. *Jersey Leather Co.*, 100 *N. J. L.* 300; *Byram* v. *Warner-Quinlan Co.*, 104 *Id.* 534; *Murphy* v. *Core Joint Concrete Pipe Co.*, 110 *Id.* 83; *Sommer* v. *Public Service Corp.*, 79 *Id.* 349; *Sutton* v. *Lerner Stores Corp.*, 10 *N. J. Mis. R.* 1126; *Santamaria* v. *Lamport & Holt Line, Ltd.*, 119 *N. J. L.* 467; *Lechman* v. *Hooper*, 52 *Id.* 253; *Severini* v. *Olim*, 15 *N. J. Mis. R.* 32. None of those decisions sustain the point here advanced.

In *Riley* v. *Jersey Leather Co.*, Mr. Justice Trenchard said:

"It is, of course, true that ordinarily the contractor and not the contractee is the person liable to an *employee* of the contractor for injuries received by the employee in the course of his employment. But that rule is subject to certain exceptions. Among others, where, as here, the contractee actively interferes with, and participates in, the work contracted for, and the real cause of the injury to the plaintiff, an employee of the contractor, is the independent negligence of both the contractee and the contractor, the contractee, as well as the contractor, is liable."

We direct attention to the general rule, as there stated, which applies to the instant case, and to the exception which took that case out of the rule and has no pertinency here.

In *Byram* v. *Warner-Quinlan* the defendant had erected a scaffold for use by the workmen in making the repairs and the injuries sued upon resulted from the collapse of the scaffold. In *Murphy* v. *Core Joint Concrete Pipe Co.* plaintiff was a truck driver in the employ of a drayman whose duty it was to transport pipe loaded upon its trucks by defendant; under conditions rendered unusual by a wash-out defendant

so directed its workmen and so directed the plaintiff that the latter was hit by one of the pipes and died as a result. In *Sommer* v. *Public Service Corp.,* the plaintiff's intestate was in the employ of a contractor engaged to build a cupola on defendant's premises; he was killed by coming in contact with wires carrying a deadly current of electricity. The contract had nothing to do with the wires, and neither the contractor nor his employee had been warned about the heavy voltage. In *Sutton* v. *Lerner Stores,* a Supreme Court decision, a workman employed by a plumbing contractor was injured by stepping, in a darkened basement, into a small pit of very hot water with which his job was not concerned, of which he had not been warned and which he did not know existed. In *Santamaria* v. *Lamport & Holt Line, Ltd.,* plaintiff's intestate was employed by a consignee to remove a cargo from the hold of a vessel, using the facilities and ways provided by the defendant; a footway collapsed and the workman met his death; neither the workman nor his employer had to do with the safety, the construction or the repair of the footway. In *Lechman* v. *Hooper* (Supreme Court) the defendant was a mason contractor who had built a wall which he left in a dangerous condition; plaintiff was engaged by the iron work contractor on the same job, with duties that did not concern the wall; plaintiff was injured by the falling of the wall. In *Severini* v. *Olim* (Supreme Court), the plaintiff had purchased an automobile part from the defendant at the latter's automobile junk yard and was injured by a movement of the automobile due, as there was proof to support, to the careless loading and jacking up of the vehicle by the defendant.

An effective distinction between the instant case and the decisions to which we have been cited is that here we have an injury caused by the very condition which the plaintiff was engaged to correct and was in the act of correcting. It is true that under the cited cases an employee of one who holds a contract to perform work on premises for the owner or occupier thereof, and who enters the premises to perform that work, is there by the implied invitation of the person for whose benefit the work is to be performed. It is also the rule

that ordinarily an owner or occupier of lands, who, by invitation, express or implied, induces persons to come upon the premises, is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes. But that rule is subject to exceptions, as, for instance, that one who comes on premises by express invitation to enjoy hospitality as a guest of the owner or occupant, or a guest who enters merely to receive a gratuitous favor from the owner or occupant, has only the rights of a licensee and must take the property as he finds it. *Lewis* v. *Dear,* 120 *N. J. L.* 244. In our opinion the logic of the situation requires that there be a further exception in such a state of facts as exists when an independent contractor, or the employee of an independent contractor, comes upon lands, at the instance of the owner or occupier, to correct the precise condition which causes the injury. The restoration or repair of a rotted roof is not *per se* an act of negligence. That the rotted condition results in injury to the employee of an independent contractor who, without supervision or control by the owner or occupier, undertakes by his own methods and materials to do the job does not manifest negligence on the part of the contractee. As well might it be said that a contractor, employed to level the uneven condition of a sidewalk, may recover from his contractee for injuries which he receives in the course of his work by stumbling over the very obstacle that he is engaged to remove. It is said by the appellant that the deceased workman should have been provided with a scaffolding built under the roof so that he need not have walked upon the weakened boards; but that was a problem for the contractor who undertook to do the work. Before recovery may be had a duty must exist in point of law and a failure in that duty must be proved in point of fact. It is hard to see how the person who engages an independent contractor is under any duty to guard the servants of the latter against the very danger that arises from their work. This was said in *Curley* v. *Hoff,* 62 *Id.* 758, of the duty of a master towards his servants, and if that is so as between master and servant, it is doubly so as between the owner or occupant of lands and the workmen of an independent contractor. There is no proof to sustain a charge of

entrapment or other active wrongdoing, and no charge of that sort is made.

Appellant seeks also to invoke the doctrine of *res ipsa loquitur*, but that doctrine has no application. Where all the facts and circumstances under which the accident occurred are disclosed by the evidence, and the question presented is whether, under the proof submitted, the conduct of the defendant was negligent, which is the present situation, there is nothing left to inference, and the rule of *res ipsa loquitur* does not apply. *Hochreutener* v. *Pfenninger,* 113 *N. J. L.* 317.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 16.

*For reversal*—None.