58 N.J. Super. 204 (1959)
156 A.2d 25
ALLAN F. JENSEN, PLAINTIFF-APPELLANT,
v.
SOMERSET HOSPITAL, A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1959.
Decided November 24, 1959.
*205 Before Judges GAULKIN, SULLIVAN and FOLEY.
Mr. John VR. Strong argued the cause for appellant (Messrs. Strong & Strong, attorneys).
Mr. Victor C. Hansen argued the cause for respondent (Messrs. Mead, Gleeson, Hansen & Pantages, attorneys; Mr. Joseph A. Clarken, Jr., on the brief).
The opinion of the court was delivered by SULLIVAN, J.A.D.
This appeal challenges the propriety of a judgment of involuntary dismissal of plaintiff's suit for damages for injuries suffered in a fall from a second-story window in defendant's hospital building.
Plaintiff was a window washer employed by the New Brunswick Window Cleaning Company (hereinafter called Brunswick), an independent contractor which had washed the windows in defendant's hospital building over a period of years and antedating the erection in 1946 of the south wing of the hospital. The windows in the hospital were of two types. In the main building they were double-hung sash windows which could be raised or lowered. Some of these windows had hooks on the outside for the fastening of a safety belt. In the south wing, erected in 1946, the windows also had double-hung sashes which could be raised *206 or lowered. In addition, each of the sashes of these windows could be pivoted vertically by the application of pressure. There was no locking device on these windows which had to be released to activate the pivot. None of these windows were equipped with outside safety hooks, nor did they have any marking thereon to distinguish them from the other windows.
Plaintiff had washed windows at the hospital on three or four previous occasions, but had never worked there above the ground floor. He testified that no one told him that the windows in the south wing pivoted or that they differed from other windows in the hospital. Although plaintiff had worked off and on as a window washer for about three years and also had some experience as a carpenter, he claimed that he never heard of a pivot window prior to the accident.
On the day in question plaintiff had washed a number of windows on the third or top floor of the hospital, including several in the south wing. He then went to the second floor with two other men who were working with him, and they continued their chores until plaintiff suffered his mishap. Plaintiff testified that while washing a second-story window in the south wing he had seated himself across the sill as he always did, so that the trunk of his body was outside of the window and his legs were inside, with his lower legs hanging down from the sill. While in this position and while pulling the lower sash down so that he could wash the outside of it, the window pivoted out under the pressure of his hands, causing plaintiff to lose his balance and fall over backwards to the ground. He suffered serious injury.
By his complaint filed in this cause plaintiff charged that defendant had failed to provide safety devices on the window for the protection of window washers and that the window was maintained in a defective condition. At the pretrial plaintiff added the contention that defendant was negligent in not instructing plaintiff or his employer "as to the nature and operation of the window, nor the manner in which to clean it, or that it had a pivoting sash."
*207 At the trial plaintiff did not attempt to prove that the window was defective or improperly installed, was not standard construction, or that the absence of hooks for safety belts on the window was evidence of negligence. The issue therefore narrowed down to the single question of whether defendant was under a legal obligation to call plaintiff's attention to the pivot windows and instruct him as to their method of operation. (In his brief plaintiff takes the position that notice to plaintiff's employer would not have been sufficient to relieve defendant of its obligation to plaintiff.) At the conclusion of plaintiff's case the trial court granted defendant's motion for an involuntary dismissal, holding that there had been no proof of the violation of any duty owed plaintiff.
It is the contention of plaintiff on this appeal that defendant had a legal duty at least to tell him about the pivot windows, because otherwise the circumstances of having two types of windows in the hospital without markings thereon to differentiate them, the fact that the windows in the south wing pivoted outward upon the application of pressure, and the lack of outside hooks on these windows for the attachment of a safety belt, all combined to create a hazardous condition. Ancillary thereto, the inference is sought to be made that if plaintiff knew these windows pivoted and both sides of the glass could be washed from inside the building, he would have done just that.
It is settled law that where the owner of property engages an independent contractor to do work upon his premises, an employee of the contractor, while on the premises executing the work, is an invitee of the property owner, since he is there presumably by the request of the owner who is under a duty to exercise ordinary care to render the premises reasonably safe for the purposes for which the invitee enters. Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210 (1954); Farrell v. Diamond Alkali Co., 16 N.J. Super. 163 (App. Div. 1951).
*208 At the trial plaintiff did not establish that defendant breached any duty which it owed him. The most that plaintiff showed was that washing windows in the upper stories of a building can be dangerous, particularly to an inexperienced or even a careless person. Plaintiff testified that he did not know how these windows worked and it was that lack of knowledge which caused his accident. However, he did not attempt to prove that these windows were not standard construction or that an experienced window washer would not be familiar with their method of operation. Lack of outside hooks for the attachment of a safety belt, of itself, was not claimed to be evidence of negligence. Defendant had the right to assume that the window cleaning company and its employees possessed the experience to recognize various standard types of windows, and the skill to perform the work contracted for. The duty of a property owner to employees of an independent contractor to maintain the premises in a reasonably safe condition does not extend to hazards that are part of or inherent in the very work which the contractor was hired to perform. Broecker v. Armstrong Cork Co., 128 N.J.L. 3 (E. & A. 1942). Here the hospital had no control or authority over the window washers or the manner in which they did their work. Plaintiff's employer, Brunswick, had been washing the windows at the hospital for many years, and while there is no evidence that defendant notified the employer of the pivot windows, the three other employees of Brunswick who testified said that they were aware that the windows in the south wing pivoted. As a practical matter, defendant could not know from one washing episode to another whether the men sent to do the work had been there before or had been properly indoctrinated. Defendant, at the risk of incurring liability, was not required to see to it that Brunswick's employees had the necessary skill and experience to handle the assignment.
It is worthy of note that one of the window washers called as a witness testified that he was washing another window *209 in the same room with plaintiff when the accident happened. This employee admitted that he had been told about the pivot windows by his foreman. Nevertheless, he also was washing these windows from the outside instead of staying inside and pivoting them. While no reason was given for washing them this way, there was evidence that the windows had outside screens which were attached at the top of the window frame and which had to be pushed out from the bottom and held out by a pole or stick while the window was being washed.
The conclusion is that there was no evidence that defendant failed in its duty to render its premises reasonably safe for the purpose for which plaintiff was there. The most that plaintiff proved was that this unfortunate accident resulted from lack of training or indoctrination, or lack of experience.
Affirmed.