73 N.J. Super. 23 (1962)
179 A.2d 129
ANNA G. ZANCA, GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF FRED B. ZANCA, DECEASED, PLAINTIFF-APPELLANT,
v.
GERALD CONTI, ETC., ET AL., DEFENDANTS, AND VILLAGE OF RIDGEWOOD, ET AL., DEFENDANTS-RESPONDENTS.
SIDD KRAVITZ, GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF MICHAEL ANGELO LOZADO, DECEASED, PLAINTIFF-APPELLANT,
v.
GERALD CONTI, ETC., ET AL., DEFENDANTS, AND VILLAGE OF RIDGEWOOD, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1961.
Decided March 8, 1962.
*26 Before Judges PRICE, SULLIVAN and LEONARD.
Mr. J. Roger Conant argued the cause for appellant Anna G. Zanca, administratrix, etc. (Mr. Hubert J. Franklin, attorney; Mr. Conant, on the brief).
Mr. J. Roger Conant argued the cause for appellant Sidd Kravitz, administrator, etc. (Messrs. Ryan, Saros, Davis & Conant, attorneys; Mr. Bernard L. Davis, of counsel; Mr. Conant, on the brief).
Mr. James A. Major argued the cause for respondents (Messrs. Major & Major, attorneys; Mr. Major, of counsel; Mr. James A. Major, II, on the brief).
The opinion of the court was delivered by PRICE, S.J.A.D.
Plaintiffs appeal from a summary judgment (R.R. 4:58-2) in favor of defendants Village of Ridgewood (hereinafter Ridgewood), Irma R. Raymond, executrix of the last will and testament of Robert P. Raymond, *27 deceased, Mervile Seely, and Harry J. Gerritsen, in two actions under the Wrongful Death Act, N.J.S.A. 2A:31-1 et seq. The cases were consolidated for trial. The motion for summary judgment was considered and resolved on the basis of the pleadings, affidavits and depositions. The issues in the consolidated actions are identical and arise out of an accident in which plaintiffs' decedents were killed.
Anna G. Zanca, general administratrix and administratrix ad prosequendum of the estate of decedent Fred B. Zanca, and Sidd Kravitz, general administrator and administrator ad prosequendum of the estate of decedent Michael A. Lozada, charged Ridgewood with ordinary negligence and also with active wrongdoing and, in addition, named ten individuals as defendants, charging all of the parties defendant with negligence asserted to have been the proximate cause of the aforesaid deaths. The individual defendants were three members of Ridgewood's governing body (B. Franklin Reinauer, II, Robert L. Olson and John W. Hand), its clerk (Wayne T. Mitchell), its engineer (Raymond), assistant engineer (Seely), and inspector (Gerritsen); Gerald Conti, a general contractor operating under a contract with Ridgewood for the construction of a sewer line; Nat Conti, a supervisory employee of Gerald Conti; and Richard Wright, a crane operator employed by Gerald Conti.
The pretrial order dismissed the actions against all defendants, except Ridgewood, its aforesaid employees (Raymond, Seely and Gerritsen), and Nat Conti. Subsequently the summary judgment from which this appeal is taken was entered in favor of Ridgewood and its three employees aforesaid. Still later a voluntary dismissal was taken as to defendant Nat Conti.
In our consideration of the propriety of the aforesaid summary judgment we are required to interpret the proofs in a light most favorable to plaintiffs. All legitimate inferences from the evidence are to be drawn in their favor. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954). So considered, the following facts appear:
*28 At the time of the fatal accident, hereinafter described, which occurred October 3, 1958, Gerald Conti was engaged in laying a sewer line on Linwood Avenue in Ridgewood pursuant to a contract with that municipality. The specifications supplied to the contractor by Ridgewood indicated that a water main owned and operated by the village was located approximately 12 feet from the proposed course of the sewer line. As the sewer work on Linwood Avenue progressed, it recame apparent that the water main was considerably less than 12 feet away from the proposed line of the sewer. On occasion, the water main was exposed and observation revealed that it was "heading at an angle that would put it closer" to the "sewer line" rather than farther away. Some of the joints of the water main leaked and, on complaint of the contractor, were caulked by the municipal water department. However, as asserted by Nat Conti, "in many cases [when complaints were made] they [the water department] would never show up."
Gerald Conti directed the attention of Robert Raymond, the municipal engineer, to the problems posed by the water main and requested that the latter order a stoppage of work until the main could be replaced and moved from its then location. Raymond did not accede to this request but instead ordered the commencment of "tight sheeting" on the sides of the excavation. As work continued on the sewer line, the water main and the sewer line became progressively closer to each other. Gerald Conti, sensing a dangerous situation, again complained to Raymond who directed that the center line of the sewer be "moved a couple of feet away from" its originally proposed course. This was done but, according to Conti, the danger persisted and, following additional and intensified complaints by the contractor, Raymond ordered the installation of "bracing underneath the water main * * * and the use of wire supports to keep it from breaking." The bracing was performed under the "direct supervision" of Gerritsen, the inspector. In making the aforesaid complaints the contractor had stressed that *29 "the existence of this water main, especially with leaking joints, created an extra hazardous condition for the work of" his employees.
Deeming the aforesaid allegedly protective measures taken by the municipality to be inadequate, Gerald Conti still further increased the vigor of his protests to the municipal representatives. These protests with unsatisfactory results were described in his affidavit as follows:
"I was not satisfied that this was adequate protection and told Mr. Raymond. He told me to continue to carry out my contract and got very angry with me when I complained about this hazard.

* * * * * * * *
I asked Mr. Raymond to permit the work to stop until a new water main was installed. This he refused.
I asked Mr. Raymond to install a temporary water line on the surface of the ground so as to divert the water from the main that was encroaching on our sewer. He refused this request.
I telephoned the Village Water Department and after speaking to the switchboard operator I was connected with a man of whom I requested that a shut-off key be provided to us for use in an emergency. I was told by this official of the Village Water Department that no shut-off keys would be released. I repeated this request to various employees of the Village Water Department who appeared on the job and was refused by them.
I do not remember the exact number of conversations that I had with Mr. Raymond wherein I apprised him of the great danger to our personnel at our job created by the aforesaid water main, but I know that it was more than six times and may have been as many as a dozen times. On one occasion about three weeks before October 3, 1958, I even told him that a dangerous accident would happen on this job if something were not done to make it safe. In spite of these requests he refused to permit me to stop the work until it could be made safe.
Mr. Raymond told me that the reason he would not permit me to shut down this job until the water main could be repaired was that, he said, I was already behind on my contract and he was very anxious to tie this sewer line into another sewer line that was being contracted [sic] somewhere else in the Village. If I had acted contrary to his direct order not to shut down the job I would have breached my contract with the Village."
The next important event revealed by the proofs is that on or about September 30, 1958 the municipal water department, at the direction of Raymond, took initial steps *30 to replace the aforesaid water main along Linwood Avenue by delivering new water pipes to the vicinity of the work site. Before the pipes were installed the fatal accident occurred.
The sole eyewitness description of the accident on October 3 is found in the deposition of Nat Conti. He testified that on that day the excavation along Linwood Avenue, running in an "easterly and westerly direction," was "21 feet deep" and "four and a half feet wide" at the scene of the accident. The old water main, still in use, was north of the excavation, about four feet below the surface of the ground, and one foot from the side of the excavation. South of the excavation and about six feet from its side was a crane weighing 18 to 20 tons. The crane was not in operation. A compressor, weighing two or three tons, was located on the south side of the ditch, about 100 feet from the crane. A similar compressor, not in operation, was on the north side of the ditch, about 20 feet to the east of the crane.
Nat Conti in his deposition stated that the first intimation that he had of the happening of the accident was that he "heard the foreman yell." Conti turned around and saw "a steady gush" of water coming from the old water main. He testified:
"It happened very fast. The sand washed up on the side and the sheeting opened up and the walers fell in and the sheeting started to close. As the sheeting closed I saw the crane start to make a turn, the boom started to turn, and slide into the hole. The compressor [on the north side] started to roll into the hole."
Conti ran to the assistance of decedents who were working at the bottom of the excavation but was unable to reach them, because sand was being washed into the ditch and pieces of the water main began to break off and fall around him. Some of the sections of the water main which broke were those which had previously been leaking. Decedents were trapped and died in the excavation as the result of the "cave-in."
*31 Plaintiffs contend that, in view of the proofs adduced, certain factual questions were presented which could be resolved only at a plenary trial. On the contrary, the defendant municipality asserts that, giving to plaintiffs full benefit of all inferences in their favor which legitimately might be drawn from the proofs, it clearly appeared that there was "no genuine issue as to any material fact challenged"; that it was "entitled to a judgment * * * as a matter of law" (R.R. 4:58-3); and that the trial court properly adjudged that no legal liability was shown to exist as against the municipality.
From the record presented two basic questions evolve: (1) What was the proximate cause of the accident? (2) Was such cause the result of any breach of duty owing by Ridgewood to decedents?
Ridgewood maintains that (a) the proofs justify no inference that the basic cause of the accident was a rupture of the water main as contended by plaintiffs and, even assuming that such inference be justified, there was no proof that Ridgewood was responsible therefor; (b) there was no proof of any negligence on its part proximately causing the accident in question but, on the contrary, the proofs showed that the fault lay in Conti's negligent performance of his work; (c) under Ridgewood's contract with Conti, all responsibility for the safety of Conti's employees rested on Conti and no duty thereunder was owed to them by the municipality; and (d) Conti's responsibility for their safety encompassed the necessity of taking all protective measures which might be required as the result of dangerous conditions encountered during the prosecution of the work under the sewer contract, including any threat posed by the proximity and alleged deteriorated condition of the water main.
In assessing the correctness of Ridgewood's aforesaid contentions, we must initially determine whether, in the record submitted to the trial court, evidence existed from which it legitimately might be inferred that the deteriorated *32 condition of the municipal water main, contiguous to the area where plaintiffs' intestates and other Conti employees were working, caused it to burst and, if so, whether such bursting was the proximate cause of the accident. Plaintiffs answer both questions in the affirmative. Ridgewood asserts that such conclusions, allegedly drawn from the depositions and affidavits, are completely unwarranted. Thus the inquiry embodied in our assessment of the propriety of the trial court's entry of summary judgment in favor of Ridgewood is a limited one. On the initial issue aforesaid, viewing the proofs most favorably for plaintiffs, we find that the foregoing factual recital supports an inference that the partially uncovered water main had deteriorated to such an extent that, during the course of the excavation, it burst, and its bursting precipitated the fatal accident.
Passing to a consideration of the next basic question, we are called upon to determine the correctness of Ridgewood's contention that the record is devoid of any evidence justifying an inference that Ridgewood owed any duty to decedents with reference to the maintenance of the water main even assuming, arguendo, that, with reference to the aforesaid issue as to the proximate cause of the accident, there exist controverted facts requiring a plenary trial for their solution.
In stressing the alleged absence of any proofs creating any duty owing by it to decedents, Ridgewood emphasizes, as fundamentally controlling, the terms of its April 15, 1958 written contract with Conti, an independent contractor. Under that contract Conti agreed "to furnish, provide and supply all materials, labor, equipment, tools and appliances necessary and proper to complete the construction of the Linwood Avenue and Route 17 Sanitary Sewer * * *." Written specifications were made part of the contract. Time was stated to be "of the essence" of the contract. The date for the commencement of the work was defined. The contract required that it be completed within 145 calendar days, with liquidated damages to be paid by Conti for each day's delay in completing the required work.
*33 Ridgewood points specifically to the following clauses in the Conti contract:
"That all questions concerning the meaning of plans, specifications and drawings shall be decided by the Engineer of the Village of Ridgewood, and the entire work shall be done under the direction of said Engineer and to the satisfaction of the Board of Commissioners of the Village of Ridgewood."
and to the following provisions in the specifications:
"Where necessary the sides of trenches and excavations shall be supported by adequate sheeting and bracing.

Sheeting and Bracing
The Contractor shall furnish, install and maintain all sheeting, shores and braces required to properly support the sides of the excavation and afford ample protection to adjoining properties and utilities.
The Contractor will be held responsible for the adequacy of all sheeting and bracing use, and for all damage to persons or property resulting from improper quality, strength, placing, maintaining or removing the same. Sheeting shall be driven as the conditions encountered require.

* * * * * * * *

Disposal of Water from Trenches
The Contractor shall at all times during the progress of the work, when required for its proper execution, keep the trenches and excavations free from water.
Water from the trenches shall be disposed of in a manner as will not cause injury to the public health, to public or private property, nor to the work completed or in progress, nor to the surface of the street or cause interference with the use of the same by the public." (Emphasis supplied)
Ridgewood contends that plaintiffs, by their action "seek * * * to foist" on it duties which "the law lays on" Conti; that it was "Conti's duty to provide a safe place for his employees to work"; that such "duty was non-delegable." Apart from its contention of alleged municipal immunity, Ridgewood cites Gibilterra v. Rosemawr Homes, Inc., 19 N.J. 166, 170 (1955), for the proposition that a "landowner is under no duty to protect an employee of an independent contractor from the very hazard created by *34 the doing of the contract work." It also cites the following principle enunciated in Wolczak v. National Electric Products Corp., 66 N.J. Super. 64, 75 (App. Div. 1961):
"The land owner may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly. Thus the unimpaired line of holdings to the effect that the duty to provide a reasonably safe working place for employees of an independent contractor does not relate to known hazards which are part of or incidental to the very work the contractor was hired to perform."
Ridgewood further points to the case of Reiter v. Max Marx Color & Chemical Co., 67 N.J. Super. 410, 412-413 (App. Div. 1960), affirmed 35 N.J. 37 (1961), noting that the general principle above enunciated was therein again recognized but held inapplicable to the there existing facts. The municipality then charges in its brief that plaintiffs in the case at bar are attempting "to circumvent" the foregoing principles by "exceptions which will not stand analysis." Dealing, as we are at present, solely with the propriety of the entry of a summary judgment in favor of Ridgewood, we find it unnecessary to resolve the oppugnant contentions of the litigants as to the relevancy and applicability of all of the legal principles discussed at oral argument and expanded in the respective briefs submitted.
Within the framework of the aforesaid rule governing motions for summary judgment we focus our attention on what we believe are the crucial elements in the light of the proofs submitted.
It is apparent that Conti, under his contract with Ridgewood, was under no duty to repair, replace or correct the water main. His obligation was to lay a sewer line. Assuming (as we hold the trial court was bound to do in resolving the motion for summary judgment) that the deteriorated water main caused the accident, we immediately note the necessity, as above stated, of determining whether, referable to the operation and maintenance of that main, Ridgewood owed a duty to decedents, who were working *35 under the existing hazard and peril arising from the proximity of the water main, of which hazard and peril Ridgewood through its responsible officials had full knowledge.
Plaintiffs contend that (a) if Ridgewood, in the operation and maintenance of its water main, was engaged in a proprietary function it was liable for ordinary negligence, and (b) if deemed to be acting in a governmental capacity, a jury would, under the proofs, be justified in finding the municipality guilty of active wrongdoing.
Parenthetically we note plaintiffs' claim, to which substantial portions of the respective briefs are devoted, that the original plans did not show the proximity of the water main to the sewer line. We feel that such fact could not afford a basis for liability as against Ridgewood, as the actual location of the water main was ultimately discovered by Conti during the progress of the work. But what Ridgewood did and did not do when the main's nearness to the deep sewer-line excavation was revealed and the main's state of disrepair disclosed, is of supreme importance in assaying Ridgewood's claim of complete freedom from liability.
There is no doubt that the proofs before the trial court demonstrated that both Conti and the responsible supervisory Ridgewood representatives were aware of the existence of grave danger to Conti's employees created by the water main's condition and the main's proximity to the excavation at the bottom of which, over 20 feet below the surface, the employees were working. The record contains proofs (which for the purpose of the motion have to be accepted as true) of the almost frantic insistence by Conti that the municipality do something to protect the workers "from an accident," and evidence of the inadequate steps that were taken by the municipality, viz., its flat refusal in the emergency to install a temporary water line or even to supply a shut-off key for emergency use; its emphasis on the contractual time limit for the completion of the sewer work and its consequent insistence that such work go forward *36 without interruption; and the municipality's belated initiation of provision for the replacement of the main  an action which was not pursued in time to avoid the tragedy.
From the foregoing a conclusion reasonably could be drawn that the water main constituted a hazard to the sewerline workers; that Ridgewood, although recognizing the danger, failed timely to take reasonable measures to avoid disaster, but instead, temporized with the situation.
The facts here involved, in view of the decision in Hayden v. Curley, 34 N.J. 420 (1961), are such as to make it unnecessary to determine whether Ridgewood acted in a proprietary or governmental capacity in the operation and maintenance of its water main. The record in our opinion would justify the conclusion that Ridgewood's operation of the water department, through the medium of which two other municipalities as well as Ridgewood itself were supplied with water, rendered its function in that field proprietary in nature. However, if governmental, it is clear that there is ample proof that it installed the water main and permitted it to deteriorate to such a dangerous state as to justify an inference that such neglect amounted to active wrongdoing. Whether or not Ridgewood's conduct caused the accident may properly be determined only at a plenary trial.
Under the circumstances existing, the municipality cannot as a matter of law be declared free from liability so as to prevail on its motion for summary judgment. We are dealing with its conduct in the face of a hazard, which, under inferences favorable to plaintiffs, may be deemed to be of its own creation. It cannot avoid a plenary trial on the theory that Conti's contract required him to protect his men from the hazard the municipality created. Moreover, the fact cannot be ignored that Ridgewood undertook preventive measures, which at a plenary trial might be found to be gravely inadequate.
No reversal of the recognized status of employees of an independent contractor in their relationship to a municipality *37 for which their employer has contracted to perform work, is involved in holding, as we do, that a plenary trial is here required. No assault on the principles enunciated in Gibilterra and Wolczak, supra, is projected. The claimed liability of Ridgewood has its genesis not in Conti's performance of the sewer work but in Ridgewood's aforesaid conduct (allegedly involving acts of omission and commission) with reference to the danger inherent in the water main.
Ridgewood next maintains that it should be freed of liability because decedents, working in proximity to the old water main, should have recognized the hazard involved. The factors to be considered in that connection are the obviousness of the danger to a man (a) with the experience of the respective decedents here involved; (b) working under conditions with which they respectively were confronted; and (c) with the same opportunity they were afforded to observe and evaluate the danger.
In the case at bar, the record reveals that the water main had been exposed at various points along the excavation and that it had been braced and wired by Conti under direction of Ridgewood's representative. There is no evidence of the experience of decedents, who were laborers, or the extent of their observation of the water main. Moreover, assuming they saw the water main, there is no evidence, presented on the motion for summary judgment, that the sections of the main observed by them were in such a state of deterioration that they should have recognized the potentially hazardous condition. Under the present proofs it cannot be said as a matter of law, as contended by Ridgewood, that decedents personally assumed the risk of the water main's breaking. The resolution of that issue, whether involving the existence of a duty owed by defendant, and, if owed, the question of the breach thereof; or considered in terms of decedents' contributory negligence (Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 51-54 (1959)), can be accomplished only at a plenary trial.
*38 Moreover, Conti's recognition of the danger may not be imputed to decedents, as is contended by Ridgewood. As we noted in Farrel v. Diamond Alkali Co., 16 N.J. Super. 163, 169 (App. Div. 1951):
"* * * While we recognize the force of the suggestion that notice to a reputable independent contractor ought ordinarily be deemed sufficient, we nonetheless believe that the facts presented in the instant matter were adequate to justify a finding that the defendant had not acted with reasonable prudence in view of the latent danger which was ever present during the plaintiff's employment * * *."
Furthermore, unlike Wolczak, supra, on which, as heretofore stated, Ridgewood relies heavily, the danger in the case at bar was not part of or incidental to a "hazard" which the contractor had been employed to correct. We emphasize that Conti was under contract with Ridgewood to install a sewer, not to make repairs to the water main. Under such circumstances, Ridgewood was not, through its employment of an independent contractor, relieved of its duty to provide a reasonably safe place for decedents to perform their work. Reiter v. Max Marx Color & Chemical Co., supra, 67 N.J. Super., at p. 413.
We also hold that reliance by Ridgewood upon the aforesaid contractual undertaking by Conti to "afford ample protection to adjoining * * * utilities," as a basis for exonerating it, is unwarranted. That provision was clearly intended as a statement of Conti's responsibility to protect the water main from being damaged, e.g., by being struck by a machine employed in the excavating operation. Manifestly the parties did not contemplate that such clause would encompass the danger of the water main's breaking from causes wholly unrelated to the process of the sewer excavation.
Again, notwithstanding that the actual sewer-line work was performed by Conti, the exercise by Ridgewood of complete control over the water main and the municipality's refusal to accede to Conti's precautionary suggestions (inferences *39 to be drawn in plaintiffs' favor in reviewing the propriety of the summary judgment), are factors requiring full disclosure of all of the surrounding circumstances at a plenary trial. Cf. Wolczak v. National Electric Products Corp., supra, 66 N.J. Super., at pp. 73-74, 77; Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425, 431 (1959); Trecartin v. Mahony-Troast Construction Co., 18 N.J. Super. 380, 386-387 (App. Div. 1952).
The action of the trial court in entering summary judgment in favor of defendant Ridgewood is reversed and the cause remanded for trial as to that defendant.
Finally, we refer to the action of the trial court in granting summary judgment in favor of defendants Raymond, Seely and Gerritsen. Although plaintiffs appealed "from the whole of the summary judgment," the "Statement of Questions Involved," which they present on appeal, contains no challenge whatever to the trial court's entry of summary judgment in favor of the aforesaid individual defendants. The only issues raised by such "Statement" are those referable to the propriety of the summary judgment entered in favor of Ridgewood. Furthermore, the issue of the liability of the individual defendants was not mentioned in the body of appellants' brief. Under those circumstances the propriety of the summary judgment in favor of the individual defendants is not before us. R.R. 1:7-1(c), 2:7; Canon v. Krakowitch, 54 N.J. Super. 93, 96 (App. Div. 1959); Gibson v. Pennsylvania Railroad Co., 14 N.J. Super. 425, 435 (App. Div. 1951). In refusing to consider that issue we imply no approval of the trial court's action in entering summary judgment in favor of the individual defendants.
As stated aforesaid, the cause as to defendant Ridgewood is remanded to the Law Division, costs to abide the outcome of a plenary trial.