Millie VECCHIO, Individually and as Administratrix of the Goods, Chattels and Credits of Mario Vecchio, Deceased, Appellant,

v.

ANHEUSER-BUSCH, INC., Appellee.

No. 28429.

United States Court of Appeals Second Circuit.

Argued Nov. 18, 1963.

Decided Feb. 24, 1964.

Augustin J. San Filippo, New York City, Borris M. Komar, New York City, of counsel, for appellant.

Hanlon & Dawe, New York City, Francis J. Healy, E. Richard Rimmels, Jr., Garden City, of counsel, for appellee.

Before MEDINA, WATERMAN and MARSHALL, Circuit Judges.

WATERMAN, Circuit Judge.

On April 26, 1960, Mario Vecchio, an electrician employed by the Art Kraft Strauss Sign Corporation, fell to his death while servicing an electric sign atop a Newark, New Jersey brewery owned by Anheuser-Busch, Inc. His widow thereafter brought this action against Anheuser-Busch, Inc. in the United States District Court for the Eastern District of New York. The ac-tion was grounded on the alleged negligence of the defendant, and jurisdiction was properly based on diversity of citizenship.

■ At the conclusion of plaintiff's case the defendant moved for a directed verdict in its favor and renewed that motion at the close of its own case. The court refused to direct a verdict, and the case went to the jury. A verdict was returned in favor of defendant, judgment was entered accordingly, and plaintiff has appealed on the ground that the trial court erred in its charge to the jury. While it does appear that the charge given was improper inasmuch as it left to the jury the task of defining the legal duty owed plaintiff's intestate by defendant, the record in the case demands that the judgment entered below be affirmed. We find that the facts developed by plaintiff during the trial were insufficient to permit recovery under governing New Jersey law, and we hold that defendant's motion for a directed verdict should have been granted.

The sign which plaintiff's decedent was servicing when he was killed was one of two such signs erected atop defendant's Newark brewery in 1951 by Art Kraft Strauss Sign Corporation, decedent's employer. Emblazoned with defendant's advertising emblem, and equipped with electric lights and neon tubing, the sign stood 30 feet high and 25 feet wide. It was supported by a metal structure embedded in the roof of the two-story brewery.

Access to the sign for servicing was had by means of a scaffold built onto it by Art Kraft Strauss when the sign was erected in 1951. The scaffold extended the length of the sign, and was supported by two cables of wire rope which were attached to its metal top. Winches on the scaffold enabled workmen servicing the sign to move the scaffold up and down on the cables. The scaffold and cables were destroyed by a hurricane in 1954 and were replaced at that time by Art Kraft Strauss Sign Corporation, decedent's employer. The replaced cables and scaffolding remained on the sign un-

til the day of plaintiff's decedent's unfortunate accident in 1960.

On the day of the accident Art Kraft Strauss ordered plaintiff's decedent and two of its other employees to service the signs on top of defendant's brewery. They were furnished with special wire for testing each sign's electrical equipment and with new electric lamps and neon tubing to be used in replacing any fixtures they might discover had deteriorated. Art Kraft Strauss issued no warnings to decedent and its other workmen relative to the condition of the scaffolding and cables on the signs.

Plaintiff's decedent and his fellow workmen arrived at defendant's brewery and proceeded to service one of the signs. Decedent and another workman, Picone, were on the sign's scaffold when the accident occurred. They had been working with the scaffold hoisted to the top of the 30-foot sign, and, having completed their work there, were lowering the scaffold. The cable supporting the side of the scaffold occupied by plaintiff's decedent suddenly snapped, and both men were thrown off. Picone managed to save himself by grabbing onto a guide cable, but plaintiff's decedent fell 100 feet through the roof of a lower adjoining building and thereby met his death.

Plaintiff claimed at the trial that at the time of the accident the advertising sign and its attached scaffold had been owned by defendant Anheuser-Busch, Inc., and that defendant had been negligent in failing to keep the scaffolding and cables in a safe condition. She introduced evidence tending to show that the cable which had snapped had done so because of deterioration caused by corrosion, that the cables had not been protected or covered in any way, and that smoke and vapors emitted from defendant's brewery buildings may have accelerated the corrosion of the cables.

When Art Kraft Strauss erected the sign in 1951, it entered into an agreement with defendant through the latter's advertising agent which provided, *inter alia,* that title to the sign was to remain in Art Kraft Strauss until certain payments had been made to it by defendant. Another agreement was entered into in 1956, providing primarily for maintenance of the sign by Art Kraft Strauss, but also containing reservation of title provisions similar to those which had been incorporated into the 1951 agreement. Plaintiff contends that, despite the reservation of title provisions and the failure of defendant to make one payment called for in the contract, title nevertheless had passed to defendant by the time of the accident. Defendant argues that title had not passed. We find no need to examine in detail the part of the agreement relating to passage of title or the effect of the payments made pursuant to it, for it is clear that the defendant must be treated as the owner of the sign for the purposes of this case. Indeed, we will assume while we examine plaintiff's claimed grounds for liability that defendant did, in fact, own the sign at the time of the accident in 1960.

By far the more important part of the 1956 agreement was that part dealing with the maintenance and care of the sign. The agreement expressly stated that it was to cover its "complete maintenance" and that of the companion sign, and the responsibility for this maintenance was placed on decedent's employer, Art Kraft Strauss. As the scaffolding and cables were part of the sign, and were used exclusively for maintenance operations by Art Kraft Strauss's employees, Art Kraft Strauss was responsible for maintaining both the scaffolding and cables and the advertising portion of the sign. Plaintiff's counsel admitted as much in the course of a colloquy with the court below, and plaintiff's own witness, one of decedent's fellow workmen, testified that he had himself inspected and greased the scaffold cables "forty or fifty times" while working on the sign on previous occasions. It was undisputed that Art Kraft Strauss had erected new cables and scaffolding to replace those destroyed by a hurricane in 1954. No evidence was introduced by plaintiff tending to show that employees of defendant had ever

worked on the sign, or the cables, or the scaffolding, or had ever directed work on them. Under New Jersey law, these facts being uncontroverted, defendant violated no duty owed by it to plaintiff's decedent, and any blame for negligence in causing the accident in this case must rest solely on decedent's employer, Art Kraft Strauss.

Continuing to treat the defendant as the owner of the sign and the scaffolding, we reach plaintiff's argument that defendant, as such owner, is bound by certain provisions of the New Jersey Safety Code in effect in 1960, R.S. 34:5–1 et seq., N.J.S.A., relating to the maintenance of scaffolding and work at elevated places generally. This argument must fail, however, because of the interpretation the New Jersey courts have given that section of the Safety Code which lists the persons upon whom its provisions are binding. The section in point is section 34:5–161 of N.J.S.A., and it imposes obligations under the Code upon "[a]ny manager, superintendent, owner, foreman or other person in charge of any building, construction or other place" where a Code violation occurs. In interpreting this section of the Code, the New Jersey courts have emphasized the words "or other person in charge," and have therefore refused to apply the Code's requirements to persons included within one of the categories set forth earlier in the section but who are nevertheless not in control of the work or premises connected with a Code violation. Gibilterra v. Rosemawr Homes, Inc., 19 N.J. 166, 115 A.2d 553 (1955); Trecartin v. Mahony-Troast Const. Co., 18 N.J.Super. 380, 87 A.2d 349 (App.Div. 1952).

In Gibilterra v. Rosemawr Homes, Inc., supra, one of the defendants, Rosemawr Homes, had hired the United Construction Company to do excavation work on a tract of land owned by Rosemawr. It had also hired one Vellone to do the plumbing work on the project. One of Vellone's employees was injured when a trench dug by United Construction Company's steam shovel operator, Bayley, collapsed. The injured employee argued that Rosemawr, as owner of the land being excavated, was bound by certain provisions of the New Jersey Safety Code relating to excavations. New Jersey's highest court rejected the argument, reasoning as follows:

"The obligations under the Safety Code, R.S. 34:5–1 et seq., N.J.S.A. * * * are imposed only upon 'any manager, superintendent, owner, foreman or other person *in charge of* any building, construction or *other place*, in which this chapter is violated,' R.S. 34:5–161, N.J.S.A. (Emphasis supplied.) Whatever may be the case as between Vellone, on the one hand, and United and Bayley, on the other, one or the other of them, and not Rosemawr, was 'in charge' of the 'place,' the trench, where the Code was violated, if it was, and the violations cannot therefore be the basis of liability of Rosemawr." Id., 115 A.2d at 555.

In the case before us defendant had contracted with decedent's employer Art Kraft Strauss for the latter to maintain and repair the sign and its scaffolding. One of plaintiff's own witnesses testified that he, as an employee of Art Kraft Strauss, had many times inspected and greased the scaffold's cables. No evidence was introduced showing that defendant in any way controlled or directed maintenance work on the scaffolding or the sign itself. Under these circumstances we think it clear that, whatever violations of the Safety Code of New Jersey may have occurred and may have operated to cause decedent's accident, defendant was not chargeable with any liability for them.

The fact that Art Kraft Strauss, plaintiff's decedent's employer, had complete control over the maintenance of the sign and scaffolding also precludes recovery under the second theory of liability advanced by plaintiff. This contention is that defendant, as owner of the premises upon which plaintiff's decedent was working, breached its duty to furnish

decedent, an invitee workman, with a safe place to work.

■ It is settled law in New Jersey that where an owner of property engages an independent contractor to do work on his premises, he owes to the contractor's employees who enter the premises to perform the work the duty of exercising reasonable care to furnish them with a safe place to work. E.g., Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210, 104 A.2d 313 (1954); Beck v. Monmouth Lumber Co., 137 N.J.L. 268, 59 A.2d 400 (1948); Murphy v. Core Joint Concrete Pipe Co., 110 N.J.L. 83, 164 A. 262 (1933); Zanca v. Conti, 73 N.J.Super. 23, 179 A.2d 129 (1962).

This duty is qualified, however, by the rule that one who engages an independent contractor to do work for him, and who does not himself undertake to interfere with or direct that work, is not obligated to protect the employees of the contractor from hazards which are incidental to or part of the very work which the independent contractor has been hired to perform. Gibilterra v. Rosemawr Homes, Inc., supra; Broecker v. Armstrong Cork Co., 128 N.J.L. 3, 24 A. 2d 194 (1942); Wolczak v. National Elec. Prods. Corp., 66 N.J.Super. 64, 168 A.2d 412 (App.Div.1961); Jensen v. Somerset Hospital, 58 N.J.Super. 204, 156 A.2d 25 (App.Div.1959), certification denied, 31 N.J. 551, 158 A.2d 451 (1960); Mergel v. Colgate-Palmolive-Peet Co., 41 N.J.Super. 372, 125 A.2d 292 (App.Div.1956); Trecartin v. Mahony-Troast Const. Co., supra.

Thus, in Broecker v. Armstrong Cork Co., supra, where an employee of a contractor hired to replace a deteriorated roof fell through the roof and was injured, the court found no liability on the part of the owner for failing to provide scaffolding or otherwise guard the employee against the danger arising from the weakened condition of the roof. And in Gibilterra v. Rosemawr Homes, supra, the owner of premises under excavation was found not to be liable to the employee of a plumbing contractor who, while laying pipe in a ditch dug by another contractor, was injured when the wall of the ditch collapsed.

On the other hand, the owner was not permitted to take advantage of the above rule and escape liability in Zanca v. Conti, supra, where the employee of a contractor hired by a village to install a sewer was injured when a water main alongside the sewer trench burst, the court emphasizing that the contractor had been hired "to install a sewer, not to make repairs to the water main." 73 N.J.Super. 23, 179 A.2d 129, 137. The same result was reached in Reiter v. Max Marx Color & Chemical Co., 67 N.J. Super. 410, 170 A.2d 828 (App.Div. 1960), where the owner of a water tank hired an independent contractor to install a new pipe at the bottom of the tank. One of the contractor's employees who had climbed down into the tank to inspect the fittings on the old pipe was injured when a stationary wooden ladder attached to the inside of the tank wall collapsed. The court refused to deem the hazard posed by the weak ladder a hazard incidental to the work which the contractor had been hired to perform, for it noted that the contractor had not been called upon to do any work on the ladder which was merely the means of access to the pipe upon which the contractor and his employees were to work. 67 N.J. Super. 410, 170 A.2d at 829–830.

In the case at bar, plaintiff's decedent's employer had contracted with defendant to provide "complete maintenance" for the sign which decedent was servicing when he was killed. The contract, as explained above, covered maintenance of not only the part of the sign serving as an advertising device but also the attached scaffold and cables. Thus, though decedent was at the time of the accident engaged in servicing a part of the sign other than the scaffolding, he was part of a larger operation of his employer which involved keeping the scaffold in a safe condition.

No evidence was introduced to show that defendant attempted to participate in any way in the maintenance work which it had hired decedent's employer

to perform, and it appears that the scaffolding in question was used only by employees of Art Kraft Strauss who serviced the sign. Decedent's co-worker who testified for plaintiff stated that he had himself inspected and greased the scaffold cable on forty or fifty occasions, and he even indicated that the inspection and greasing of the cables had been done by him and other Art Kraft employees on the same days that they had worked on the advertising portion of the sign.

On the basis of these uncontroverted facts, we are forced to conclude that the hazard which caused decedent's death was part of and incidental to the very work which decedent's employer, Art Kraft Strauss, had contracted with defendant to perform, and, therefore, that the governing New Jersey law permits of no recovery by plaintiff as against this defendant. Thus, despite the incorrect charge given the jury when they found for defendant, the judgment entered below for defendant must be affirmed because the lower court should not have submitted the case to the jury at all but should have granted defendant's motion for a directed verdict.

Affirmed.

MEDINA, Circuit Judge (dissenting).

I dissent. I agree with my brothers that the New Jersey Safety Code is inapplicable. I also agree that the verdict for defendant rested on an unsound base because of the bizarre way in which the trial judge instructed the jury that it was their function to formulate the rule of law defining the duty of a landowner to employees of a contractor lawfully working on the premises. I disagree with the holding that the widow has no rights under New Jersey law.

As stated in the majority opinion Anheuser-Busch, Inc. must be considered the owner of the sign with all its appurtenances. It was clearly affixed to the building and the owner could not by an agreement with Art Kraft Strauss Sign Corporation divest itself of the duty to furnish a reasonably safe place to work to employees of a contractor who would in the course of their employment do the type of work decedent was called upon to do at the time the cable snapped and he was precipitated to his death. My brothers also correctly state the New Jersey law to be that the landowner "is not obligated to protect the employees of the contractor from hazards which are incidental to or part of the very work which the independent contractor has been hired to perform." Where I disagree is on the application of this rule to the evidence before us.

There was evidence from which the jury might have found that the snapping of the cable was due, not solely to a failure to grease the cables, but in whole or in part to exhaust vapors containing sulfurous acid that frequently enveloped the cables and caused an acceleration of corrosion. Thus the jury might have found as a fact that this acceleration of corrosion was a substantial factor in causing the accident. If so, the accident was not due exclusively to a hazard that was incidental to or part of the work to be performed by the contractor, and the cases relied upon by my brothers are not applicable.

As I read the New Jersey cases the rule that governs this case is that a landowner owes to employees of a contractor working on the premises a duty to take the precautions for the safety of such employees that a reasonably prudent landowner would take under the circumstances of the case. Hardman v. Ford Motor Company, App.Div., 1961, 70 N.J. Super. 275, 175 A.2d 455; Sommer v. Public Service Corporation of New Jersey, Ct.Err. & App., 1910, 79 N.J.L. 349, 75 A. 892; Zanca v. Conti, App.Div., 1962, 73 N.J.Super. 23, 179 A.2d 129; Mergel v. Colgate-Palmolive-Peet Co., App.Div., 1956, 41 N.J.Super. 372, 125 A.2d 292; Wolczak v. National Electric Products Corp., App.Div., 1961, 66 N.J. Super. 64, 168 A.2d 412; Broecker v. Armstrong Cork Co., Ct.Err. & App., 1942, 128 N.J.L. 3, 24 A.2d 194.

Reasonable men might differ on the subject of whether Anheuser-Busch, Inc.

knew or should have known that the clouds of sulfurous vapor came in contact with the cables and might or did cause an acceleration of corrosion. Reasonable men might also differ on the subject of whether a reasonably prudent landowner, under the circumstances of this case, would have warned the contractor of the danger.

I would reverse and remand for a new trial.