**John HOLDAWAY, Plaintiff,**

v.

**Frank GUSTANSON; Alton "Bud" Rasmussen; Jack Finley; and Amoco Production Company, a Delaware corporation, Defendants.**

No. C81–184–K.

United States District Court,
D. Wyoming.

March 27, 1986.

David B. Hooper, Riverton, Wyo., for plaintiff.

Frank D. Neville, Casper, Wyo., for defendant Amoco Production Co.

## ORDER GRANTING DEFENDANT AMOCO'S MOTION FOR SUMMARY JUDGMENT WITH FINDINGS

KERR, District Judge.

The above-entitled matter coming on regularly for hearing before the Court upon defendant Amoco Production Company's (Amoco) motion for summary judgment; plaintiff appearing by and through his attorney, David B. Hooper, and defendant Amoco appearing by and through its attorney, Frank D. Neville, and the Court hav-

ing heard the arguments of counsel in support of and in opposition to said motion, and having carefully examined the pleadings, affidavits, depositions and the memorandum briefs filed on behalf of the parties, and all matters pertinent thereto, and being fully advised in the premises, FINDS:

That this action was originally filed in July of 1981 as the result of an oil rig accident. On August 10, 1982 this Court entered its order granting summary judgment to defendant Amoco on the basis that Colorado Well Service (CWS) was an independent contractor and that Amoco retained no control over CWS sufficient to destroy the independent contractor relationship and make Amoco liable under the master-servant doctrine.

On December 11, 1984 the United States Court of Appeals for the Tenth Circuit reversed the summary judgment decision and remanded the case, holding that there was a factual question, legitimately raised by the Bates' deposition, as to "[w]hether Amoco had in fact retained the right to control notwithstanding the contractual language." *Holdaway v. Amoco*, 751 F.2d 1129, 1131 (10th Cir.1984).

Since that time, the Wyoming Supreme Court issued its decision in *Noonan v. Texaco*, 713 P.2d 160 (Wyo.1986) wherein the Court affirmed a grant of summary judgment on facts nearly identical to those presented here.

Upon remand of this case, defendant Amoco filed another motion for summary judgment on the basis of the *Noonan* decision. After carefully reviewing the *Noonan* opinion, this Court again concludes that summary judgment is proper under the standards of Wyoming law to be applied to this matter. Therefore, this Court readopts its prior order on summary judgment with additional findings relative to the *Noonan* decision.

The plaintiff is an individual and a citizen of the State of Wyoming. Defendant Amoco is a corporation, incorporated under the laws of the State of Delaware with its principal place of business in the State of Illinois.

This Court has jurisdiction under 28 U.S.C. § 1332(a).

Plaintiff Holdaway was injured on April 14, 1980, while working as an employee of CWS as a motorman on Rig No. 88 in Fremont County, Wyoming.

Holdaway was injured when a "wet connection" was encountered as the drill pipe was removed from the hole. The "wet connection" caused drilling fluids to spill onto the floor of the rig. Holdaway was working the breakout tongs. When a "wet connection" occurs, workers try to get out of the way to avoid the drilling fluid. As a result of the "wet connection" in this case, Holdaway's leg went into the rotary table and was severely broken, eventually requiring amputation. (Deposition of Holdaway).

Holdaway indicated that while he considered the rig to be worn, he did not feel the situation was unsafe for him, was not concerned about his safety, and was engaged in normal operating procedure. (Deposition of Holdaway at pp. 23, 34, 56).

At the time of the injury, CWS was drilling a well for Amoco on a lease owned by Amoco pursuant to a written day work drilling contract. The drilling contract contained the following relevant clauses:

4. Contractor shall be an independent Contractor with respect to all work done and services performed hereunder and neither Contractor nor anyone used or employed by Contractor shall be deemed for any purpose to be the agent, servant or representative of Amoco in the performance of such work or services or any part thereof, or in any matter dealt with herein, and Amoco shall have no direction or control of Contractor or his

employees and agents, except in the results to be obtained.

7. When Contractor is furnishing the crew, drilling machinery, and drilling equipment in the performance of work necessary for coring, logging, perforating, acidizing, setting liners, swabbing, installing connections, abandoning and other items of work and labor, commonly known as "day work," it is agreed:

(a) All day work shall be subject to and under the direct supervision of a designated representative of Amoco.

Oscar Bates was an Amoco employee who visited the well site nearly every day. His duties consisted of "looking after the drilling program on a particular well and getting it drilled the way Amoco wanted it drilled." (Deposition of Bates at pp. 20, 35). Bates also prepared drilling reports and made sure that the driller (CWS) complied with the contract requirements. He had the authority to shut down the operation if necessary for safety reasons. (Deposition of Bates at pp. 23, 28–29, 31; Deposition of Gustanson at p. 11). Bates was not involved in supervising the everyday operations of the rig unless the conditions were unsafe or the work was not being done properly. Bates did not find cause to shut down the rig. (Deposition of Bates at pp. 55–57).

The hiring and training of rig workers was done by CWS and for the most part CWS employees had no contact with the Amoco employee, Bates. (Deposition of Holdaway at pp. 12, 26–27, 55; Deposition of Gustanson at pp. 12–14, 19). The maintenance of the rig was the responsibility of CWS. (Deposition of Gustanson at p. 24).

■ CWS is an independent contractor under the terms of the contract and as that position is defined by prior case law. *Combined Ins. Co. of America v. Sinclair*, 584 P.2d 1034, 1042 (Wyo.1978); *Lichty v. Model Homes*, 66 Wyo. 347, 211 P.2d 958, 967 (1949); *Komma v. Continental Oil Co.*, No. 77–1954, Slip Op., unpublished, (10th Cir. June 12, 1979); see also 41 Am.Jur.2d

*Independent Contractors* (1968). Amoco's reservation of the right to supervise and control to guarantee satisfactory performance does not destroy the nature of the independent contractor relationship. *Noonan v. Texaco*, 713 P.2d 160. Amoco has a right to impose specifications and standards on CWS as an independent contractor, and to oversee the operations in such a way as to insure such standards are followed. *Noonan v. Texaco*, 713 P.2d 160; *Komma v. Continental Oil Co.*, No. 77–1954, Slip Op. (10th Cir. June 12, 1979); 41 Am.Jur.2d *Independent Contractors* (1968).

The Court in *Noonan* specifically observed the bounds of control which an owner such as Amoco may exercise and still maintain the independent contractor relationship.

We think an owner who undertakes to see that an independent contractor operate[s] in a safe manner ought not be penalized. The reservation of a right to require safe equipment, material, and supplies to be used by the contractor is not without justification or reason. The owner has a vital interest in assuring himself that his well will be drilled efficiently, in a good workmanlike manner, at a reasonable cost, and that the final result is as good as possible. Good, safe equipment is a substantial factor in insuring that performance. But, a simple reservation of a right to inspect and secure that benefit does not cause the contractor to become the owner's employee, for the owner has not taken over the details of safety with respect to the contractor's employees. *Noonan v. Texaco*, 713 P.2d at 167.

Further, on this point, the Wyoming Supreme Court found that "[t]he details of safety being in control of the contractor rather than Texaco, it is apparent to us that Texaco's minimal, and we feel necessary, involvement in safety did not result in the contractor becoming Texaco's employee so that Texaco became liable to appellant

under the doctrine of respondeat superior." *Noonan, Id.*

This Court is bound to apply the law of Wyoming. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Brady v. Hooper,* 751 F.2d 329 (10th Cir.1984); *Blackner v. McDermott,* 176 F.2d 498 (10th Cir.1949). The Wyoming Supreme Court opinion in *Noonan* has clearly established the law in this area, and, therefore, this Court is obligated to follow that law. As a matter of law, the fact that a company representative of the leaseholder has authority to stop drilling operations because of the existence of an unsafe condition does not abrogate the independent contractor relationship thus creating a master/servant relationship so that liability would attach. *Noonan v. Texaco,* 713 P.2d at 166.

While a contract is not conclusive evidence of the relationship between parties, it is certainly a compelling indication of the type of association contemplated. *Noonan v. Texaco,* 713 P.2d at 165; *Combined Ins. Co. of America v. Sinclair,* 584 P.2d 1034; *Parsons v. Amerada Hess Corp.,* 422 F.2d 610, 611 (10th Cir.1970). The drilling contract in this case indicated without reservation that CWS was an independent contractor. Amoco's reservation of the right to supervise "day work" is not sufficient to destroy that type of relationship.

In spite of the independent contractor relationship, Amoco would remain liable for its own negligence. A finding of negligence requires the existence of a duty. Certain duties have been imposed on employers of independent contractors. Employers (such as Amoco) have a duty to provide a safe working place on their premises for employees of the independent contractor (CWS). *Abeyta v. Hensley,* 595 P.2d 71 (Wyo.1979); *Vecchio v. Anheuser-Busch, Inc.,* 328 F.2d 714 (2nd Cir.1964). However, in this case, the "premises" upon which the accident occurred were owned by CWS. The accident took place on the drilling rig which CWS had brought to the site. It was not the premises of Amoco, the leasehold itself, which is even alleged to have caused the injury.

Furthermore, Amoco is not obligated to protect the employees of CWS from hazards which are incidental or part of the very work which CWS was hired to perform. *Vecchio v. Anheuser-Busch, Inc.,* 328 F.2d at 718. The activity which led to the injury was conducted by CWS and the danger arises out of the activity itself. In such a situation, the responsibility is that of CWS and not Amoco. *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627 (Texas 1976).

Recovery is also allowed from employers of independent contractors when the work is inherently dangerous. However, the class of persons protected in such a case does not include employees of the independent contractor. Therefore, even if the work engaged in was ultrahazardous in nature, Holdaway has no right of recovery against Amoco. *Parsons v. Amerada Hess Corp.,* 422 F.2d at 616.

Employers must exercise due care in their selection of an independent contractor. *Komma v. Continental Oil Co.,* No. 77–1954, Slip Op. (10th Cir. June 12, 1979); 41 Am.Jur.2d *Independent Contractors* (1968). That such care was not taken by Amoco has not been alleged in this case.

While ordinarily the independent contractor relationship is a question for jury determination, where there is no dispute as to the facts surrounding the contract, and where only one reasonable inference can be drawn therefrom, the question then becomes one of law. *Noonan v. Texaco,* 713 P.2d at 164; *Combined Ins. Co. of America v. Sinclair,* 584 P.2d at 1042. There is no dispute here regarding the nature or existence of the drilling contract. There is no question that Amoco's employee took part in the supervision of the actual drilling operation. The situation is simply not one where the control exercised was sufficient to destroy the independent contractor relationship. *Noonan v. Texaco,* 713 P.2d 160. Further, the existence of a

duty or duties which Amoco owes to employees of CWS is not present here or has not been alleged in this case.

Even though Bates, Amoco's company representative, felt he had the right to shut down operations in the face of an immediate safety hazard, it is the same right that Tyler, the Texaco company representative in *Noonan*, felt he had. This does not destroy the independent contractor relationship under Wyoming law nor in this case does it leave open a question of fact. Therefore, it is clear that reasonable minds could not differ, that both the facts and the contract in this case unquestionably establish and maintain an independent contractor relationship between Amoco and CWS.

From the foregoing, the Court finds that there is no dispute as to any material fact and the matter is ripe for summary judgment.

NOW, THEREFORE, IT IS

ORDERED that the motion of defendant Amoco Production Company for summary judgment, be, and the same is, hereby granted.